SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

*Attorney for Defendant*
**ANTHROPIC PBC**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CONCORD MUSIC GROUP, INC., ET AL.,

Plaintiffs,

v.

ANTHROPIC PBC, ET AL.,

Defendants.

Case No. 5:26-cv-00880-EKL-SVK

**ANTHROPIC PBC'S NOTICE OF MOTION AND MOTION TO STAY**

Judge: Hon. Eumi K. Lee
Date: May 20, 2026
Time: 10:00 a.m.
Courtroom: 7 – 4th Floor

**NOTICE OF MOTION AND MOTION TO STAY**

PLEASE TAKE NOTICE THAT, on May 20, 2026, at 10:00 a.m. in Courtroom 7 of the U.S. District Court for the Northern District of California, San Jose Division, at 280 South 1st Street, San Jose, CA, this Motion to Stay filed by Defendant Anthropic PBC ("Anthropic") will be heard.

Anthropic moves to stay *Concord Music Group, Inc. et al. v. Anthropic PBC, et al.*, 5:26-cv-00880-EKL-SVK ("*Concord II*") pending final resolution of the substantially similar litigation in *Concord Music Group, Inc., et al. v. Anthropic PBC*, 5:24-cv-03811-EKL-SVK ("*Concord I*") or, in the alternative, pending resolution of the parties' motions for summary judgment and any subsequent appeal in that litigation. Anthropic's Motion to Stay is based on this Notice of Motion and the supporting Memorandum of Points and Authorities.

In accordance with VIII.A of Judge Lee's Civil Standing Order, the undersigned counsel certifies that counsel for Anthropic met and conferred with Plaintiffs' counsel regarding the bases for this Motion on March 3, 2026 and did not reach resolution.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs,[1] a group of music publishers (hereinafter "Publishers"), have filed two related cases against Anthropic bringing overlapping copyright claims predicated on the same core facts and legal theories. The first-filed action (*Concord I*) has completed fact and expert discovery and is approaching summary judgment practice that will determine several threshold legal issues governing these claims. Those threshold legal issues—including whether Anthropic's use of lyrics as training data constitutes fair use—will determine the viability of most if not all of Publishers' claims in *Concord II* and could have preclusive effect in this case. *Concord II* should be stayed so that the claims in both cases are resolved in an orderly and consistent manner.

In *Concord I*, Publishers allege that Anthropic unlawfully copied lyrics Publishers claim to own, removed copyright management information ("CMI") during pre-training data processing, incorporated the lyrics into training datasets, and used those lyrics to train and deploy Anthropic's AI models, known collectively as "Claude," which third-party users could allegedly prompt to

[1] Plaintiffs in both cases are a group of music publishers and their affiliates. *Concord II* includes the same plaintiffs and adds eleven affiliated entities, all represented by the same counsel.

generate infringing outputs. In the course of the litigation, Publishers filed a motion for leave to amend the complaint (1) to assert a new claim predicated on Anthropic's alleged acquisition of works using BitTorrent and (2) to add Works in Suit ("WIS") that may have been uploaded or downloaded via the alleged "torrenting." *See Concord I* Dkt. 411 at 1-2.[2] Anthropic opposed amendment on the grounds that Publishers "ha[d] long been on notice of" Anthropic's alleged acquisition methods yet failed to timely investigate those claims. *Concord I* Dkt. 419 at 1. The Court agreed and denied leave to amend for this specific reason. *See Concord I* Dkt. 468 (minute order); *Concord I* Dkt. 474 (Oct. 8, 2025 Hrg Tr.) at 25:11-13, 27:6-7, 29:18-22, 30:14-15 (finding that Publishers had not been "sufficiently diligent [in] discovering the BitTorrent theories of liability").

Three months later, Publishers filed this action. *Concord II* not only includes the previously rejected "torrenting" allegations (tied to 714 works, at least 7 of them *Concord I* WIS) but reasserts the same infringement theories already being litigated for 499 WIS in *Concord I* as applied to 20,517 new works in *Concord II*. *See* Compl. ¶¶ 6, 10. Permitting *Concord I* and *Concord II* to proceed simultaneously would be inefficient, as it would result in unnecessary labor for both parties and the Court. *Concord I* is well-positioned to materially narrow this case. Regardless of whether Anthropic or Publishers prevail on summary judgment and at trial, the rulings will shape what remains to be litigated in *Concord II*. If, for example, Anthropic prevails, the training- and CMI-based claims in *Concord II* relating to the newly added WIS will be resolved or substantially narrowed, leaving only Publishers' acquisition-related claim. Allowing the cases to proceed in parallel would result in duplicative, time-consuming discovery for over 20,000 new WIS—including as to ownership, chain of title, and deposit copies—before the Court has the benefit of the rulings resolving the governing legal questions in *Concord I*.

Granting a stay here is consistent with the Court's ruling denying Publishers' leave to amend in *Concord I*. The entire focus of that motion was whether Publishers would be permitted to

[2] Publishers in *Concord I* sought leave to amend their Complaint to: "(1) add allegations regarding Anthropic's unlawful reproduction of Publishers' works in connection with their existing direct infringement claims to conform to the new evidence of Anthropic's downloading of their works via torrenting; (2) assert new direct infringement claims for Anthropic's unlawful distribution of Publishers' works based on [the same]; and (3) amend Publishers' Works in Suit to include works that Anthropic downloaded and uploaded via BitTorrent." *Concord I* Dkt. 411 at 1-2.

belatedly amend their complaint to include allegations about "how Anthropic used BitTorrent . . . to download via 'torrenting' millions of unauthorized copies of books" and then amend the WIS "to include works that Anthropic downloaded and uploaded via BitTorrent," all of which would have derailed the case schedule. *Concord I*, Dkt. 411 at 1-2. Anthropic explained that Publishers had long had reason to investigate this theory of the case yet failed to do so, and this Court agreed. Publishers then filed this lawsuit, including the downloading allegations the parties had debated including in *Concord I*. But these allegations account for only a small fraction of the new case, which includes copyright claims for over 20,000 works that are indistinguishable from the claims in *Concord I*. *See* Compl. Ex. A (listing 714 works allegedly torrented), Ex. B (listing 20,517 works allegedly infringed). That is the overlap that warrants the stay of *Concord I*.

This Court has broad inherent authority to coordinate related proceedings to promote efficiency, consistency, and the orderly administration of its cases. In addition, the first-to-file rule, a traditional doctrine used to coordinate overlapping cases, further supports a stay. Anthropic respectfully requests that the Court exercise this authority to stay *Concord II* pending final resolution of *Concord I* or, in the alternative, pending resolution of the parties' motions for summary judgment and any subsequent appeal.

**ARGUMENT**

The Court may stay this case under its inherent authority to manage its docket and ensure the efficient use of judicial resources. The Court has broad discretion to stay an action "'pending resolution of independent proceedings which bear upon the case.'" *Vicious Brands, Inc. v. Face Co., LLC*, 2025 WL 754068, at *6 (N.D. Cal. Mar. 10, 2025) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). "'[F]or a court to issue a stay, the parties in the two cases need not be the same and the issues need not be identical.'" *DocuWare Corp. v. Courtronic Inc.*, 2021 WL 9968641, at *2 (C.D. Cal. Dec. 20, 2021) (quoting *Owino v. CoreCivic, Inc.*, 2018 WL 11282678, at *1 (S.D. Cal. Feb. 16, 2018)). In fact, resolution of the issue in the prior case need not even be "'necessarily controlling'" of the lawsuit in question. *Vicious Brands*, 2025 WL 754068, at *6 (quoting *Leyva*, 593 F.2d at 864).

The Ninth Circuit has "'identified three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law.'" *Vicious Brands*, 2025 WL 754068, at *6 (quoting *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024)). All three factors support a stay here.

*First*, staying *Concord II* pending resolution of *Concord I* would promote the "'orderly course of justice'" and allow for significant "'simplifying . . . of issues, proof, and questions of law.'" *Id.* at *6 (quoting *In re PG&E Corp.*, 100 F.4th at 1085). Resolution of *Concord I* will plainly "bear upon th[is] case," *id.* (quoting *Leyva*, 593 F.2d at 863), and would determine—or at minimum significantly narrow—the issues, evidence, and legal questions to be litigated here. As discussed above, *Concord II* reprises the same training-, outputs-, and CMI-based theories from *Concord I*, now across a vastly expanded set of works. *Compare* Compl. ¶ 173, Count IV (alleging Anthropic "derived a direct financial benefit from its licensees and users' infringement of Publishers' copyrighted musical compositions"), *with Concord I* Dkt. 337 (First Amended Compl. ("FAC")) ¶ 185, Count III (same); Compl. ¶ 148, Count II (alleging Anthropic "unlawfully reproduced, distributed to the public, publicly displayed, and/or prepared derivative works based upon Publishers' musical compositions"), *with Concord I* Dkt. 337 (FAC) ¶ 160, Count I (same); Compl. ¶ 159, Count III (alleging "Anthropic facilitates, encourages, and materially contributes to [the] infringement [of its users]"), *with Concord I* Dkt. 337 (FAC) ¶ 171, Count II (same); Compl. ¶ 185, Count V (alleging Anthropic "intentionally removed or altered [CMI] from Publishers' works, without Publishers' authorization"), *with Concord I* Dkt. 337 (FAC) ¶ 197, Count IV (same). To be sure, *Concord II* includes new allegations related to Anthropic's alleged downloading. But these allegations comprise only a small fraction of the works, *see* Compl. Ex. A (listing 714 works allegedly torrented), Ex. B (listing 20,517 works allegedly infringed), and do not change the substantial overlap between the two lawsuits.

The outcome of both actions will depend on how the Court resolves the legal questions posed by the overlapping claims. In particular, in *Concord I* the parties will ask the Court to address: (1) whether Anthropic's use of copyrighted materials for AI training is fair use; (2) whether Anthropic can be held directly, vicariously, or contributorily liable for outputs generated by third parties; and (3) whether any of Anthropic's alleged acts satisfies Publishers' claims under the Digital Millenium Copyright Act ("DMCA"). With summary judgment practice scheduled to begin soon in *Concord I*, these issues are positioned for resolution. *See Concord I* Dkt. 587 at 8 (dispositive motions to be fully briefed by June 8, 2026). And even if the Court does not fully resolve those issues through summary judgment, the Court's rulings will undoubtedly provide guidance to the parties on these overlapping issues. For that reason, Anthropic alternatively requests that the Court stay proceedings in *Concord II* pending resolution of the parties' *Concord I* summary judgment motions (including any subsequent appeal) at which time the Court and the litigants may evaluate whether any further stay is warranted.

Should *Concord II* be permitted to proceed in advance of these rulings, the parties would need to initiate extensive discovery, including discovery into copyright ownership, chain-of-title, deposit copies, and registration materials for 20,000+ works; how Claude models were trained; how Claude models generate outputs; and how Anthropic's guardrails presently work. Such discovery would be highly technical, time-consuming, and expensive, and, if *Concord I* is any guide, may require this Court to oversee numerous discovery disputes—all of which may be wholly unnecessary if *Concord I* resolves or substantially narrows the legal predicates for these works-based claims. In other words, the rulings of *Concord I* will narrow or, at minimum, meaningfully inform any discovery that is appropriate in this case. Rather than proceeding now on a broad and potentially wasted record, discovery—if it becomes necessary at all—can be tailored to any issues that survive *Concord I*.

*Second*, a stay would not result in any "damage" to any party. Publishers will not experience any "'damage,'" "'hardship or inequity'" if forced to pause this case. *See Vicious Brands*, 2025 WL 754068, at *6 (quoting *In re PG&E Corp.*, 100 F.4th at 1085). Nothing about Publishers' behavior in this case suggests a need for immediate resolution. Unlike in *Concord I*, Publishers have not

moved for a preliminary injunction or otherwise claimed they would be irreparably harmed pending resolution of this litigation. *See Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (noting that "[i]n assessing the relative hardship to the parties . . . [a] delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief"); *see also Acres 4.0 v. IGT*, 2023 WL 9111408, at *4 (D. Nev. Nov. 14, 2023) (noting that where "Defendant did not move for a preliminary injunction" of the court's previously issued stay of its counterclaims pending conclusion of patent reexamination, it "weaken[ed] its undue prejudice claim"). In fact, Publishers waited more than three and a half months after denial of their motion for leave to amend to file *Concord II.* And they did not pursue discovery on Anthropic's data acquisition practices until filing their motion for leave to amend in *Concord I*, 19 months into discovery.

Most importantly, a stay would not prevent Publishers from pursuing their downloading-based claims; it would merely pause the litigation until the Court and parties can benefit from resolution of the related issues in *Concord I*. Thus, even if Publishers had shown some degree of urgency, they would have no argument that a stay would cause any unusual or particularized hardship. *See Vance v. Google LLC*, 2021 WL 534363, at *5 (N.D. Cal. Feb. 12, 2021) (discounting generalized arguments regarding lost evidence and degradation of testimony where parties were already engaged in active discovery in earlier-filed action); *see also PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014) (discounting similar arguments absent "a specific showing of prejudice beyond the delay necessarily inherent in any stay"); *AT&T Intellectual Property I v. Tivo, Inc.*, 774 F.Supp. 2d 1049, 1054 (N.D. Cal. 2011) (rejecting similar arguments).

*Third*, Anthropic will face substantial hardship and inequity absent a stay. Where, as here, Publishers "[can]not adduce evidence" they will be harmed by a stay, "courts have considered the moving party's burden in litigating the case to be a legitimate form of hardship." *In re American Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *45 (C.D. Cal. July 31, 2012). Allowing *Concord II* to proceed immediately would require Anthropic to engage in unnecessary discovery on the same theories at issue in *Concord I* (yet for many more WIS) before the core legal questions in *Concord I* are resolved. This is precisely the kind of concrete litigation burden the hardship factor is designed to prevent. *See, e.g.*, *Arris Solutions, Inc. v. Sony Interactive Ent. LLC*,

2017 WL 4536415, at *1-*3 (N.D. Cal. Oct. 10, 2017) (granting stay in patent infringement action where there was "the strong potential for duplicative discovery" with a parallel ITC proceeding). The balance of equities plainly favors a stay.

While the Court's inherent authority over its own docket is sufficient grounds to grant a stay, the first-to-file rule also supports staying *Concord II*. The "first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). It too is "intended to 'serve the purpose of promoting efficiency well and should not be disregarded lightly.'" *Id.* (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)). Here, that doctrine points in the same inescapable direction.

Anthropic acknowledges that Publishers' torrenting-based claims involve both a new method of data acquisition as well as a new theory of copyright infringement premised upon the copyright holder's exclusive right to distribute. But courts regularly grant motions to stay with distinct theories and factual allegations where, as here, the cases overlapped substantially at their core. *See, e.g.*, *Renesas Electronics America Inc. v. Monterey Research, LLC*, 2024 WL 5077109, at *3-*4 (N.D. Cal. Dec. 10, 2024) (staying later-filed case that contained the same core patent dispute as earlier action); *Sermeno v. Int'l Paper Co.*, 2025 WL 4058523, at *3 (C.D. Cal. Dec. 18, 2025) (granting motion to stay because "a second case's additional theory [of liability] does not necessarily prevent the application of the first-to-file rule") (internal citations omitted); *Bellone v. First Transit, Inc.*, 2022 WL 4292964, at *4 (N.D. Cal. Sept. 16, 2022) (same). This case is no different. Because the claims tied to the expanded WIS in *Concord II* substantially duplicate the claims already pending in *Concord I*, the litigation should be stayed.[3]

**CONCLUSION**

For the foregoing reasons, the Court should stay *Concord II* until *Concord I* is resolved or, in the alternative, until the parties' motions for summary judgment and any subsequent appeal are resolved.

---

[3] Anthropic of course reserves the right to present claim preclusion and issue preclusion arguments if *Concord I* reaches a final judgment, just like Publishers do. That is the very source of the efficiency gained in staying this action.

Date: March 10, 2026

/s/ *Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

*Attorney for Defendant*
**ANTHROPIC PBC**