**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Corey Miller
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
corey@oandzlaw.com

Jennifer L. Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
Thomas A. Harvey (SBN 235342)
Bina G. Patel (SBN 315352)
One Montgomery Street, Suite 3000
San Francisco, California 91404-5500
Telephone: (415) 391-4800
ef-jgk@cpdb.com
ef-tah@cpdb.com
ef-bgp@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC. et al., <br><br> Plaintiffs, <br> v. <br><br> ANTHROPIC PBC et al., <br><br> Defendants. | Case No. 5:26-cv-00880-EKL-SVK <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY** <br><br> Judge: Hon. Eumi K. Lee <br> Date: May 20, 2026 <br> Time: 10:00 a.m. <br> Courtroom: 7 – 4th Floor |

Plaintiff Publishers submit this memorandum of law in opposition to Defendant Anthropic's Motion to Stay.

### PRELIMINARY STATEMENT

Anthropic cannot satisfy the heavy burden it faces to justify a stay of this action. It claims that a stay is necessary to promote judicial economy and avoid the inefficiencies of two separate actions with related issues. However, if efficiency were its true goal, Anthropic would have consented to Publishers' proposed amendment in *Concord I*, which would have permitted Publishers' pirate-library torrenting claims to be heard together with their other copyright claims in a single action. Instead, Anthropic argued, and the Court accepted, that the addition of these torrenting claims to *Concord I* would "fundamentally transform" the case and require "new discovery on issues that are foreign to" that case. Anthropic Opp. to Motion to Amend (ECF No. 419) at 1, 10.

Having successfully opposed Publisher's proposed amendment, Anthropic now sings an entirely different tune and has scarcely a word to say about the torrenting claims it insisted were so different that they had to be litigated separately. But the inconvenient reality for Anthropic is that even if it were to prevail in *Concord I* on fair use, any such ruling would not resolve Publishers' pirate-library torrenting claims, which represent separate acts of infringement in downloading and distributing copyrighted works from pirate sites. Such claims will not be adjudicated or resolved by *Concord I*. As a result, any discovery necessary for such claims will need to occur regardless of what transpires on summary judgment in *Concord I*. Given these circumstances, having the parties delay for an indefinite period when they could be advancing the case that will remain to be litigated in any scenario is anything but efficient.

Accordingly, the Court should deny Anthropic's motion for a stay.

### ARGUMENT

As the party requesting a discretionary docket management stay, Anthropic "bears the burden of showing that the circumstances justify an exercise of that discretion." *Niken v. Holder*, 556 U.S. 418, 433-34 (2009). The Ninth Circuit has "identified three nonexclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) the possible damage which may

result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice in terms of simplifying or complicating of issues, proof, and questions of law." *In re PG& Corp. Sec. Lit.*, 100 F.4th 1076, 1085 (9th Cir. 2024).

The Supreme Court has cautioned that "if there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). The Ninth Circuit has recognized the *Landis* rule as imposing significant "restrictions on what otherwise might be an unfettered exercise of discretion." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (reversing grant of stay); *see also Vicious Brands, Inc. v. Face Co., LLC*, 2025 U.S. Dist. LEXIS 43182, at *17 (N.D. Cal. Mar. 10, 2025) (noting a district court's failure to account for *Landis* admonition can warrant reversal as abuse of discretion). Here, there is more than a "fair possibility" that the requested stay will damage Publishers, and Anthropic has failed to "make out a clear case of hardship or inequity" that would result from defending a case which will not be disposed of regardless of the outcome in *Concord I.* Accordingly, Anthropic's motion for a stay should be denied.

With respect to the first factor concerning the "possible damage" Publishers would face in the event of a stay, "precedent calls for only a minimal showing on this factor in order to impose a heavy burden on the party seeking a stay." *Vicious Brands*, 2025 U.S. Dist. LEXIS 43182, at *21.

Publishers easily meet the required threshold, for multiple reasons. First, Publishers' pirate-library torrenting claims in *Concord II* go well beyond those to be adjudicated in *Concord I,* as Anthropic itself acknowledges. In particular, Publishers allege in *Concord II* that "Defendants [Anthropic, Dario Amodei, and Benjamin Mann] downloaded by torrenting an enormous number of unauthorized copies of Publishers' works from illegal shadow libraries to avoid paying for those works, while at the same time uploading via torrenting unlawful copies of the same works, all in blatant violation of Publishers' copyrights." Compl. ¶ 2, ECF No. 1; *see also, e.g., Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1046 (N.D. Cal. 2025) (finding that Anthropic's co-

PLAINTIFFS' OPPOSITION TO MOTION TO STAY

founder used "the infamous BitTorrent protocol" to illegally copy millions of copyrighted works from two notorious "pirate library" websites, Library Genesis and Pirate Library Mirror).

In Anthropic's own words, Publishers' "torrenting-based claims involve both a new method of data acquisition as well as a new theory of copyright infringement premised upon the copyright holder's exclusive right to distribute." *See* Def. Motion (ECF No. 59) at 7.  Indeed, Anthropic opposed Publishers' motion to amend *Concord I* to add these torrenting claims, precisely because the addition of such claims "would fundamentally alter the nature of this action, transforming it from a focused case concerning the presence of lyrics in training data and outputs, to a technically and legally complex case concerning the nature of torrenting and its interaction with copyright law."  Anthropic Opp. to Motion to Amend (ECF No. 419) at 9.  Anthropic further argued that the torrenting "allegations will require costly and time-intensive new discovery on *issues that are foreign to this case*, including testimony by new fact and expert witnesses."  *Id*. at 10 (emphasis added).

Given these differences, whatever rulings this Court issues on the upcoming summary judgment motions in *Concord I* will not resolve Publishers' separate torrenting claims—which should proceed without delay.  As noted above, even were Anthropic to prevail on its fair use defense in *Concord I*, any such ruling would not resolve Publishers' claims as to Defendants' illegal downloading and simultaneous uploading of their copyrighted works from pirate websites using BitTorrent, a file-sharing technology widely used for mass copyright infringement.  *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1025 (N.D. Cal. 2025) ("doubt[ing] that any accused infringer could ever meet its burden of explaining why downloading source copies from pirate sites *that it could have purchased or otherwise accessed lawfully* was itself reasonably necessary to any subsequent fair use") (emphasis in original); *see also, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1027 (9th Cir. 2013) ("[E]ach [BitTorrent] user is both downloading and uploading several different pieces of a file from and to multiple other users.").  Publishers have already identified hundreds of copies of their copyrighted musical compositions among the millions of copyrighted works that Defendants are known to have torrented based on

3

publicly available information. But Publishers have no way of knowing the full extent of Defendants' downloading and uploading of their works via torrenting, which results in multiple acts of infringement of an unknown universe of works, until they proceed with discovery.  In such circumstances, the first factor weighs clearly against granting a stay.  *See*, *e.g.*, *Johnson v. Starbucks Corp.*, 2020 U.S. Dist. LEXIS 74695, at *4-5 (E.D. Cal. Apr. 27, 2020) (denying stay pending appeal of two cases where "[c]ourt will have to adjudicate the interior path-of-travel issue regardless of the outcomes of" the appealed cases).

It also bears noting that the harm Publishers face from these acts of piracy is hardly trivial. Anthropic settled the torrenting claims at issue in *Bartz* for $1.5 billion. *Bartz v. Anthropic PBC*, Case No. 3:24-cv-05417-WHA, Unopposed Motion for Preliminary Approval of Class Settlement (ECF No. 362).  Even though Publishers are not seeking preliminary injunctive relief in *Concord II*, they no doubt stand to suffer substantial potential damages from the blatant acts of infringement occasioned by Defendants' torrenting of their works from illegal pirate websites. Publishers also seek a permanent injunction against torrenting of their copyrighted works, further establishing sufficient harm for purposes of opposing a stay.  *See*, *e.g.*, *Am. Honda Motor Co. v. Coast Distrib. Sys.*, 2007 U.S. Dist. LEXIS 19981, at *4 (N.D. Cal. Feb. 26, 2007).

Publishers have a right to pursue these claims expeditiously and without unnecessary delay. Anthropic's requested stay "would prevent the Court from disposing of the issues not related to [*Concord I*] and would prejudice [Publishers] by needlessly drawing out the litigation." *See Johnson*, 2020 U.S. Dist. LEXIS 74695, at *4-6 (finding that damage and prejudice to defendant from unnecessarily delaying resolution of proceedings outweighed any savings in judicial economy).

Anthropic seeks to minimize the significance of the torrenting claims by contrasting the 714 known torrented works in *Concord II*, which implicate illegal reproduction and distribution claims distinct from those in *Concord I*, with the 20,517 other works in *Concord II* that Anthropic infringed in connection with AI training and output, similar to its infringement in *Concord I*.  Def. Motion at 2.  However, that comparison is disingenuous.  First, the number of works identified in

4

the *Concord II* complaint is necessarily limited by publicly available information on the scope of Defendants' pirate-library torrenting activity, which Anthropic concealed in *Concord I* (and the full extent of which it continues to conceal today). Publishers fully expect this universe of infringed works to expand with the advent of discovery into Defendants' illegal torrenting, which should proceed now so that the full scope of the case can be properly defined without unnecessary further delay.

Moreover, given that the publicly disclosed torrenting activities took place four to five years ago, and depositions in *Concord I* have already revealed faded recollections on the part of Anthropic's witnesses, a stay threatens to further prejudice Publishers by permitting the passage of time to further degrade witnesses' memories of the relevant facts. *See*, *e.g.*, *Valdez v. City of Fontana*, 2025 U.S. Dist. LEXIS 119046, at *7-8 (C.D. Cal. Apr. 25, 2025) ("Plaintiffs' interest in proceeding expeditiously strongly weighs in favor of denying the stay" where stay "will undoubtedly result in witnesses' memories fading, therefore prejudicing Plaintiffs").

Beyond the purely quantitative element, Anthropic understates the qualitative significance of the pirate-library torrenting claims, which it previously insisted would "fundamentally alter the nature" of *Concord I*. However, now that it has succeeded in keeping torrenting entirely out of *Concord I*, Anthropic hopes to treat the torrenting claims as an afterthought that may be indefinitely postponed while waiting for unrelated rulings. Anthropic attempted a similar strategy in *Bartz* of using a stay to delay a full adjudication of its wrongdoing, but the Court there rejected Anthropic's motion for a stay pending appeal as an improper attempt to avoid any inquiry into the various "colorations in its piracy." *See Bartz v. Anthropic PBC*, 2025 U.S. Dist. LEXIS 154870, at *7 (N.D. Cal. Aug. 11, 2025). This Court should reach the same result here because, as in *Bartz*, "[t]he machinations of Anthropic's downloading of pirate libraries and its deployment of bit-torrenting to do so looms large in this case . . . ." *Id*. at *6. While Anthropic would once again obviously prefer not to "come clean" regarding the full scope of its illegal activities, *id*. at *7, Publishers are entitled to develop a full factual record as to the nature and scope of Anthropic's illegal conduct without waiting for rulings on other issues that may (or may not) be involved in the

5

PLAINTIFFS' OPPOSITION TO MOTION TO STAY

case.

In contrast to Publishers' strong interest in moving forward to develop the necessary evidence for its case, Anthropic has failed to make out the required "clear case of hardship or inequity" to support a stay. *See Landis*, 299 U.S. at 254-55. "[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity . . . ." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). But that is all Anthropic asserts here in seeking to rely on their supposed "burden in litigating the case" and the potential for unnecessary discovery (s*ee* Def. Motion at 6), which are considered irrelevant under *Landis. See*, e.g., *Am. Honda Motor*, 2007 U.S. Dist. LEXIS 19981, at *5.

Anthropic nevertheless argues that the burden of litigating is sufficient to justify a stay where the adverse party is unable to show the harm a stay would inflict. Def. Motion at 6. But as even the case law cited by Anthropic shows, it has the relevant calculus backwards. "Precedent calls for only a minimal showing" of harm by Publishers "in order to impose a heavy burden" on Anthropic to justify a stay. *Vicious Brands*, 2025 U.S. Dist. LEXIS 43182, at *21. As detailed above, Publishers have easily crossed their required threshold. *See* pp. 2-6 *supra*; *see also Am. Honda Motor*, 2007 U.S. Dist. LEXIS 19981, at *4 (defendant failed to meet its burden to show plaintiff would not be harmed if litigation was delayed where plaintiff seeking injunctive relief for infringement of patent). Accordingly, it is Anthropic that must come forward with something more than the kind of ordinary burdens associated with litigating the case and being faced with potentially unnecessary discovery.

Finally, a stay would not promote the orderly course of justice. Because *Concord II* concededly "raises issues not raised by [*Concord I*], . . . a stay would be inefficient." *Expensify, Inc. v. Swappoint AG*, 2023 U.S. Dist. LEXIS 207024, at *10 (N.D. Cal. Nov. 18, 2023). The logic expressed by the Court in *Expensify* is equally applicable here: "Overall, this case is just getting started and should not be stayed where the same progress that could occur now would still need to occur after a stay." *Id*. While the parties are waiting for a summary judgment ruling in *Concord I*, they can advance with the discovery that is needed for *Concord II*, whereas a stay

6

"would require both parties to simply sit and wait for months on the sidelines . . . foreclos[ing] any possibility of the parties resolving their dispute in a timely fashion or of the Court disposing of issues unrelated to those" to be addressed by the summary judgment ruling. *Dister v. Apple-Bay E., Inc.*, 2007 U.S. Dist. LEXIS 86839, at *13 (N.D. Cal. Nov. 15, 2007). Under such circumstances, a stay is decidedly inefficient and should be denied. *See Johnson*, 2020 U.S. Dist. LEXIS 74695, at *4.

And even with respect to those issues where there is some overlap between *Concord I* and *Concord II*, Anthropic exaggerates the potential efficiencies to be gained. Although the actions share some common parties, fewer than half overlap. *See Concord I* ECF No. 578 at 2. Similarly, fewer than 1% of the works in suit in *Concord II* overlap with *Concord I*. *Id*. And Anthropic omits that *Concord II* also involves claims and allegations that Anthropic infringed Publisher's works in connection with AI training and output relating to its AI models trained and released in the distinct period *after Concord I*. *Id*. Thus, even beyond the entirely unrelated torrenting claims that Anthropic stated would "fundamentally transform" the nature of *Concord I* if added to that case, *Concord II* presents other substantial differences from *Concord I* that further militate against a stay. *See*, *e.g.*, *Am. Honda Motor*, 2007 U.S. Dist. LEXIS 19981, at *6 (finding stay would not promote efficiency where although ITC proceeding potentially involved same products as court suit, "the patents relate to different portions and pieces of the engine in the allegedly infringing products").

Balancing all relevant factors, Anthropic has failed to meet the heavy burden necessary to justify a stay.

PLAINTIFFS' OPPOSITION TO MOTION TO STAY

## CONCLUSION

For the foregoing reasons, Anthropic's motion for a stay should be denied.

Dated: March 24, 2026

By: _____

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Corey Miller
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
corey@oandzlaw.com

Jennifer L. Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com,
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
Thomas A. Harvey (SBN 235342)
Bina G. Patel (SBN 315352)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 772-5795
ef-jgk@cpdb.com
ef-tah@cpdb.com
ef-bgp@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

8