SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

*Attorneys for Defendant*
**ANTHROPIC PBC**

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>       Plaintiffs,<br><br> v.<br><br>ANTHROPIC PBC, ET AL.,<br><br>       Defendants. | Case No. 5:26-cv-00880-EKL-SVK<br><br>**DEFENDANT ANTHROPIC PBC'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY**<br><br>Judge: Hon. Eumi K. Lee<br>Date: May 20, 2026<br>Time: 10:00 a.m.<br>Courtroom: 7 – 4th Floor |

The question before the Court is whether to stay *Concord II* pending resolution of *Concord I*. *Concord II* is in its very earliest stages. Even since this motion was initially filed, the Publishers have stated they intend to amend their complaint and will do so by April 6, 2026. Dkt. 72 at 2. Briefing on Defendants' motions to dismiss will not be complete until June, and a hearing will follow at the Court's convenience. *Id.*; *see also* Dkt. 73. By contrast, the Court is scheduled to hear summary judgment in *Concord I* on July 15. *Concord I*, Dkt. 587 at 9. There is no legitimate question that staying *Concord II* will conserve judicial (and party) resources without unduly prejudicing Publishers.

*First*, *Concord II* raises the same core claims and legal issues as *Concord I*, expanded to a larger set of 20,517 works. This Court's summary judgment rulings in *Concord I* will provide valuable guidance on those claims, and could even eliminate them. The only different claim is that related to the alleged use of BitTorrent pertaining to 714 works. Proceeding with *Concord II* now— when the Court will imminently consider threshold issues at summary judgment in *Concord I*— creates a substantial risk of expensive, duplicative, and burdensome litigation.

Publishers cannot and do not dispute this. Instead, Publishers spend the bulk of their brief claiming that *Concord II*'s additional torrenting-related allegations nevertheless justify proceeding in parallel. But a stay is appropriate even without perfect identity of issues and facts. The torrenting-related allegations relate to just 3% of the works at issue in *Concord II*. It makes good sense to stay this case while the Court provides critical guidance that could fundamentally shape or eliminate the claims on the other 97%. Given the overwhelming efficiency and logic of a stay, Publishers' suggestion that Anthropic is seeking to "avoid" litigating the torrenting issue falls flat. Indeed, even under Anthropic's proposal, the torrenting allegations will be litigated, alongside whatever else remains of *Concord II* after the Court's rulings in *Concord I*.

*Second*, Publishers cannot and do not articulate any cognizable prejudice from the proposed stay. All Publishers can muster is a generic interest in the expeditious resolution of their claims. *See* Dkt. 67 at 5. Balanced against the benefits of a stay, that interest (which exists in all cases) is insufficient. But this argument rings especially hollow in view of Publishers' own delay in bringing these claims. The reason we are here at all is that this Court found Publishers did not diligently

pursue these claims in *Concord I*. On the other side of the scale is the burden on both the Court and the parties of litigating issues that *Concord I* could render moot in just a matter of months. This goes well beyond the "ordinary burdens of litigation" Publishers cite.

## I.    A STAY WILL CONSERVE JUDICIAL RESOURCES

As Anthropic's motion explained, this case "reprises the same training-, outputs-, and CMI-based theories from *Concord I*" that will be presented to the Court at summary judgment in the earlier case. Dkt. 59 at 4. Publishers do not meaningfully dispute this. Instead, Publishers attempt to downplay the factual and legal overlap between the two cases and the efficiencies to be gained from staying *Concord II* while *Concord I* is litigated. Each of their arguments fails.

*First*, Publishers (at 2) accuse Anthropic of singing a "different tune" from its arguments opposing amendment in *Concord I*, claiming that "if efficiency were its true goal, Anthropic would have consented to Publishers' proposed amendment in *Concord I* … [so that] Publishers' pirate-library torrenting claims [can] be heard together with their other copyright claims in a single action." Not so. In *Concord I*, Anthropic explained that Publishers had long been on notice of the torrenting allegations yet failed to diligently pursue them. *Concord I* Dkt. 419 at 1; *see also* Dkt. 59 at 3. Injecting that new theory at the eleventh hour would have derailed that case and prevented efficient resolution of the core legal issues. The Court agreed—holding that Publishers had not been sufficiently diligent in pursuing the BitTorrent theories of liability. *See Concord I* Dkt. 474 (Oct. 8, 2025 Hrg Tr.) at 25:11-13, 27:6-7, 29:18-22, 30:14-15. Anthropic's position has been consistent: Publishers can pursue the "torrenting" claim. But the consequence of Publishers' lack of diligence is that efficiency is best-served litigating that claim separately and sequentially.

*Second*, Publishers (at 4) argue that "whatever rulings this Court issues on the upcoming summary judgment motions in *Concord I* will not resolve Publishers' separate torrenting claims." Fair enough. But Publishers' torrenting claims comprise only a tiny fraction of the *Concord II* claims and cannot justify parallel litigation of the full case. Publishers could have brought a standalone torrenting claim, but they did not. Instead, they chose to file an expansive action that includes the same outputs-, training-, and CMI-based copyright theories in *Concord I* over a massively expanded set of works. It is nonsensical to forge ahead in discovery based on a single non-overlapping issue

pertaining to 3% of the works, when the remaining 97% of the case involves legal issues that will be shaped by summary judgment by the first-filed action. (Indeed, the first-to-file rule independently supports a stay. *See* Dkt. 59 at 8. Anthropic raised this argument in its motion and Publishers did "not respond[] at all," and thus have "conced[ed] the issue." *Ramirez v. Ghilotti Bros., Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013).

And resolution of these issues is underway. In *Concord I*, Publishers have moved for summary judgment on fair use as it pertains to both training and outputs, *see Concord I* Dkt. 594 at 25, and Anthropic will move on fair use as to training. As Publishers themselves acknowledge in their motion for summary judgment, it is "well established that a court can resolve the issue of fair use on a motion for summary judgment when no material facts are in dispute." *See id*. (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008)).[1] Anthropic also intends to seek summary judgment on Publishers' CMI claims. It is thus likely that the claims common to both actions will be resolved at summary judgment in *Concord I* in short order. Even if Publishers' claims survive, the Court will issue critical guidance on the legal standards that apply and will identify which, if any, disputed issues of fact remain. In other words, the Court's rulings at summary judgment will necessarily shape what discovery (if any) will be required for the 20,000+ works-based claims in *Concord II*.

*Third*, Publishers (at 8) try to discount the significant overlap between the two cases by pointing out that "fewer than half [of the parties]" and "fewer than 1% of the works in suit" overlap. But what matters most is the relevant overlap in the "issues, proof, and questions of law" to be decided, not the parties. *Vicious Brands, Inc. v. Face Co., LLC*, 2025 WL 754068, at *6 (N.D. Cal. Mar. 10, 2025). And, in any case, Publishers neglect to mention that the additional plaintiffs in *Concord II* are **all corporate affiliates** of *Concord I* plaintiffs.

Unable to dispute the merits of Anthropic's stay request, Publishers seek refuge in inapposite cases. *Johnson v. Starbucks Corp.*, 2020 WL 2039054 (E.D. Cal. Apr. 27, 2020) involved a stay sought by *plaintiff*, which *defendant* had opposed. In denying the stay, the Court noted that "Plaintiff brought this lawsuit and therefore should be prepared to litigate it to its conclusion," and that

---

[1] Emphasis added and internal citations and quotations omitted, unless otherwise noted.

Plaintiff "made no argument that he would suffer any kind of hardship or inequity." *Johnson*, 2020 WL 2039054, at *2. In *Expensify, Inc. v. Swappoint AG*, 2023 WL 8007983 (N.D. Cal. Nov. 18, 2023), the Court denied the stay because the parallel TTAB proceeding was far from resolution, as "no depositions ha[d] been taken, no expert discovery ha[d] been conducted, no dispositive motions ha[d] been filed, and no trial date ha[d] been set." *Id.* at *3. Here, discovery in *Concord I* is complete and summary judgment briefing is underway. *Dister v. Apple-Bay East, Inc.*, 2007 WL 4045429 (N.D. Cal. Nov. 15, 2007) involved a motion to stay pending an appeal of a separate class certification decision. Denying a stay, the court reasoned that the motion came months after plaintiff had notice of the intent to appeal and the impact of the appeal was at most "speculative" and possibly "readily distinguishable." *Dister*, 2007 WL 4045429, at *4-5. Here, Anthropic promptly filed the motion to stay and the legal issues in *Concord I* and *II* substantially overlap. *Concord I*'s impact is not "speculative" but concrete. Finally, *American Honda Motor Co., Inc v. Coast Distribution Systems Inc.*, 2007 WL 672521 (N.D. Cal. Feb. 26, 2007) involved a motion to stay pending resolution of proceedings in the ITC which, as the movant conceded, "are not binding on [the District] Court." *Id.* at *2. But resolution of *Concord I* will certainly bear on the legal claims in *Concord II*, and may have legally preclusive effects beyond the "persuasive value" of the ITC ruling in *American Honda Motor Co.*

## II.    A STAY WILL NOT PREJUDICE PUBLISHERS

Publishers have not articulated any cognizable harm they will face from a stay. Nor can they. *First*, Publishers (at 5) make the irrelevant claim that the harm caused by torrenting is "hardly trivial" because Anthropic settled the claims in *Bartz* for $1.5 billion. But Publishers miss the point. Anthropic is not seeking to prevent Publishers from litigating their torrenting claim to the extent it survives any motion to dismiss.[2] *See* Dkt. 59 at 7. Anthropic is asking only that the Court institute a stay so the Court and the parties can benefit from the rulings of *Concord I*. Indeed, that is why Anthropic seeks a stay even in advance of any motion to dismiss decision, as the rulings in *Concord*

---

[2] Publishers (at 6) point to Anthropic's *Bartz* motion to stay to suggest that Anthropic is attempting to avoid scrutiny of its alleged torrenting. Not so. Anthropic moved for a stay pending resolution of two interlocutory appeals of summary judgment and class certification decisions. These decisions came at a time where the trial date was likely to arrive before the appeals could be resolved.

*I* may inform the Court's determination on motions to dismiss.

Insofar as Publishers argue some prejudice from the *delay* in potential recovery, that delay is not cognizable. A "delay in monetary recovery"—no matter the amount—is insufficient to deny a stay. *Clear Blue Specialty Ins. Co. v. Karimi*, 2025 WL 2444449, at *4 (N.D. Cal. Aug. 23, 2025). Because Publishers are seeking damages in the form of monetary relief, rather than a preliminary injunction,[3] Publishers have no colorable claim of harm. Rather, if Publishers succeed on their claims, Publishers will be awarded damages as appropriate and can seek interest. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 718 (9th Cir. 2004).

*Second*, Publishers (at 6) argue without support that a stay will prejudice them "by permitting the passage of time to further degrade witnesses' memories of the relevant facts." "Speculative assertions that evidence may be lost" are insufficient to deny a stay. *Evolutionary Intel. LLC v. Yelp Inc.*, 2013 WL 6672451, at *7 (N.D. Cal. Dec. 18, 2013). Publishers cite a single case where the court rejected an "effectively … indefinite stay" pending the conclusion of an investigation that had "no timeline." *See Valdez v. City of Fontana*, 2025 WL 1712386, at *2 (C.D. Cal. Apr. 25, 2025). It beggars belief to suggest there is a risk of degradation here over the span of mere months, especially when Anthropic has instituted legal holds—both for this case and dating back as far as 2024 for *Bartz*. *See Vance*, 2021 WL 534363, at *5. If Publishers were truly concerned about "faded recollections," they would have been diligent in pursuing those theories in the first instance. *See Concord I* Dkt. 474 (Oct. 8, 2025 Hrg Tr.).

### III.  ANTHROPIC WILL SUFFER HARDSHIP AND INEQUITY ABSENT A STAY

Publishers (at 7) downplay Anthropic's burdens as "ordinary burdens associated with litigating…." Not so. The hardship of "litigat[ing] similar claims on … two fronts" may occur where there is "the potential for inconsistent rulings and resulting confusion." *Vance*, 2021 WL 534363, at *5. "[F]orcing a party to conduct substantial, unrecoverable, and wasteful discovery and pretrial motions practice on matters that could be mooted may amount to hardship or inequity sufficient to justify a stay." *See Finder v. Leprino Foods Co.*, 2017 WL 1355104, at *4 (E.D. Cal. Jan. 20, 2017).

---

[3] Publishers seek a permanent injunction (vs. preliminary injunction), which is insufficient to show harm to justify a stay. *See Vance v. Google LLC*, 2021 WL 534363, at *4 (N.D. Cal. Feb. 12, 2021).

Date: March 31, 2026                    /s/ *Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6220

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000


*Attorneys for Defendant*
**ANTHROPIC PBC**