SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

*Attorneys for Defendant*
**ANTHROPIC PBC**

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

CONCORD MUSIC GROUP, INC., ET AL.,

                    Plaintiffs,

        v.

ANTHROPIC PBC, ET AL.,

                    Defendants.

Case No. 5:26-cv-00880-EKL-SVK

**DEFENDANT ANTHROPIC PBC'S**
**NOTICE OF MOTION AND MOTION FOR**
**PARTIAL DISMISSAL**

Hearing Date: November 4, 2026
Time: 10:00 a.m.
Judge: Hon. Eumi K. Lee

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

SUMMARY OF THE ALLEGATIONS ........................................................................................3

LEGAL STANDARD ....................................................................................................................4

ARGUMENT .................................................................................................................................4

    I.     The Court Should Dismiss Publishers' Direct Copyright Infringement Claim (Count II) With Respect To Outputs................................................................................4

          A.     Publishers' Conclusory Allegations Fail To Provide A Single Example Of Infringement In A Claude Output......................................................5

          B.     Publishers Do Not Identify Which Works Were Infringed In Outputs ................................................................................................................7

          C.     Publishers' Output Allegations Are Equally Consistent With Noninfringement ........................................................................................8

    II.    The Court Should Dismiss Publishers' DMCA Claim (Count V)...................10

          A.     Publishers Do Not Plead That Anthropic Possessed Their Copyrighted Works As A Whole ..............................................................................10

          B.     Publishers Do Not Plausibly Allege That Anthropic Distributed Their Lyrics Knowing CMI Had Been Removed.........................................11

    III.    The Court Should Dismiss These Claims With Prejudice ...............................12

CONCLUSION .............................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Andersen v. Stability AI Ltd.*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) ...................................................................2, 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................4

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) .............................................................5, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................4, 5

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) ...........................................................................5

*Doe 1 v. GitHub, Inc.*,
2024 WL 1643691 (N.D. Cal. Apr. 15, 2024) ................................................................12

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
2022 WL 16961477 (C.D. Cal. Aug. 25, 2022)...............................................................11

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......................................................................................8, 9

*Falkner v. General Motors LLC*,
393 F. Supp. 3d 927 (C.D. Cal. 2018) ...........................................................................11

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026)....................................................................................................8

*Iglesia Ni Cristo v. Cayabyab*,
2019 WL 3997474 (N.D. Cal. Aug. 23, 2019) .................................................................7

*Imperial v. Ramsey*,
2010 WL 2765540 (N.D. Cal. July 13, 2010).................................................................12

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ........................................................................................8

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ........................................................................................4

*In re Google Generative AI Copyright Litig.*,
809 F. Supp. 3d 903 (N.D. Cal. 2025).........................................................................7, 8

*Jangle Vision, LLC v. Alexander Wang, Inc.*,
2023 WL 7042518 (9th Cir. Oct. 26, 2023).....................................................................8

*Justice v. Uncharted Labs, Inc.*,
    2026 WL 1430232 (S.D.N.Y. May 21, 2026) ............................................................7, 10

*Kabir v. Flagstar Bank, FSB*,
    2016 WL 10999326 (C.D. Cal. May 11, 2016) ...............................................................10

*Kadrey v. Meta Platforms, Inc.*,
    788 F. Supp. 3d 1026 (N.D. Cal. 2025) ...........................................................................10

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ..........................................................................................9

*Nielsen v. Thornell*,
    101 F.4th 1164 (9th Cir. 2024) .........................................................................................7

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
    2011 WL 166198 (N.D. Cal. Jan. 18, 2011) .....................................................................5

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ........................................................................................12

*Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*,
    2022 WL 20286688 (N.D. Cal. Feb. 24, 2022) ...............................................................12

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ..........................................................................................11

*Synopsys, Inc. v. ATopTech, Inc.*,
    2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)....................................................................5

*Tremblay v. OpenAI, Inc.*,
    716 F. Supp. 3d 772 (N.D. Cal. 2024) ..............................................................................8

*Webb v. Trader Joe's Co.*,
    999 F.3d 1196 (9th Cir. 2021) ........................................................................................10

**STATUTES, RULES, AND REGULATIONS**

17 U.S.C. § 106...................................................................................................................10

17 U.S.C. § 1202(b) .................................................................................................10, 11, 12

17 U.S.C. § 1202(c) ...........................................................................................................2, 11

Fed. R. Civ. P. 12(b)(6).........................................................................................................4

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE THAT, on November 4, 2026, at 10:00 a.m. in Courtroom 7 of the U.S. District Court for the Northern District of California, San Jose Division, at 280 South 1st Street, San Jose, CA, this Motion for Partial Dismissal filed by Defendant Anthropic PBC ("Anthropic") will be heard.

Anthropic respectfully moves for partial dismissal of Count II and full dismissal of Count V of the Second Amended Complaint ("SAC") filed at Dkt. 93 in *Concord Music Group, Inc. et al. v. Anthropic PBC, et al.*, No. 5:26-cv-00880-EKL-SVK ("*Concord II*") on May 21, 2026. Anthropic's Motion for Partial Dismissal is based on this Notice of Motion and the supporting Memorandum of Points and Authorities. In accordance with Section VIII.A of Judge Lee's Civil Standing Order, the undersigned counsel certifies that counsel for Anthropic met and conferred with Plaintiffs' counsel regarding the bases for this Motion on March 23, 2026, and July 24, 2026.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Publishers assert that Anthropic has infringed copyrights in Publishers' musical works and improperly removed those works' copyright management information ("CMI"). *E.g.*, SAC ¶¶ 113-120, 141, 148, 156, 165-68. Because Publishers' conclusory allegations cannot state a claim, Anthropic moves to dismiss with prejudice (1) the portion of Publishers' direct infringement claim that is based on outputs allegedly generated by Claude (Count II) and (2) Publishers' CMI claim (Count V) in full.

This lawsuit does not arrive on a blank slate. On October 18, 2023, the same corporate families, represented by the same counsel, sued Anthropic for direct and secondary copyright infringement and CMI removal in *Concord Music Group, Inc. et al. v. Anthropic PBC*, No. 5:24-cv-03811-EKL-SVK (N.D. Cal.) ("*Concord I*").[1] Like here, *Concord I* alleged that Claude generated purportedly infringing outputs containing lyrics to specific songs for which Publishers claim to own copyrights. *Concord I,* Compl. ¶¶ 66-69 (Oct. 18, 2023), Dkt. 1 ("*Concord I* Compl."); *Concord I,* Second Am. Compl. ¶¶ 87-89 (May 21, 2026), Dkt. 718 ("*Concord I* SAC"). But while

---

[1] Emphasis is added and internal citations and quotations are omitted unless otherwise noted.

the *Concord I* complaint included examples of outputs allegedly demonstrating infringement of the 499 Works in Suit—as output-based claims for infringement must—the *Concord II* complaint lacks ***even a single example of any allegedly infringing output***. Publishers presumably omitted the 20,517 works now at issue in *Concord II* from *Concord I* **because** they did not have any evidence of infringing outputs. *See* SAC, Exhibit B, Dkt. 93-2.

Without any examples*,* Publishers' bare-bones allegations regarding Claude outputs fail to state a direct-infringement claim. Publishers merely assert in conclusory fashion that Claude "models still generate output infringing Publishers' works" and that, in response to third-party requests, "Claude has generated and continues to generate responses reproducing those lyrics." SAC ¶¶ 12, 113. Repetition of the elements of copyright infringement, however, does not state a claim. Publishers have now had years to develop their evidence and yet still offer no examples to support their allegations, a particularly notable omission given Publishers' acknowledgement that Anthropic has "refined and expanded" "additional guardrails purportedly designed to minimize AI output copying Publishers' copyrighted works." *Id.* ¶¶ 115-116. This pleading failure requires dismissal of the portion of Publishers' direct infringement claim premised on Claude outputs.

Publishers also fail to state a claim under the Digital Millennium Copyright Act ("DMCA") for CMI removal or the distribution of works knowing CMI has been removed. Because the DMCA defines CMI as certain information "conveyed in connection with" a "***work***," only tampering with CMI from a complete "work" is prohibited, not portions of one. 17 U.S.C. § 1202(c); *see, e.g.*, *Andersen v. Stability AI Ltd.,* 744 F. Supp. 3d 956, 971 (N.D. Cal. 2024). Congress's inclusion of this limitation was logical: while it makes sense to roll movie credits at the end of a screening of an entire film (and require that they not be removed when the entire film is copied), it would be impractical to do so each time a clip of that movie is played. But here, Publishers allege only that Anthropic removed CMI from ***lyrics***, not from their allegedly copyrighted ***works***, which are full musical compositions. The lack of any allegations that Anthropic even possessed the full musical compositions containing CMI—much less made copies without CMI that were otherwise "identical to a plaintiff's work"—defeats Publishers' DMCA claim in full. *Andersen*, 744 F. Supp. 3d at 971. And regardless, Publishers cannot plausibly allege that Anthropic distributed their works as outputs

knowing CMI has been removed because (again) they do not identify any examples of Claude outputs that contained their lyrics at all.

Publishers have long been on notice of these deficiencies and failed to fix them, warranting dismissal with prejudice. Publishers filed their initial complaint in this case on January 28, 2026. Dkt. 1. On March 18, 2026, Anthropic sent a letter to Publishers urging them to amend, writing that "Publishers' Complaint lacks any allegations of specific examples of outputs that purportedly infringe Publishers' works" and "[i]f there are any additional allegations or amendments that [Publishers] believe would cure the defects in [their] claims, please let us know immediately." Decl. of Robin Burrell in Supp. of Mot. to Dismiss ("Burrell Decl.") Ex. A at 1-2 (Letter from S. Mehta to N. Hailey, Mar. 18, 2026). Despite Anthropic's efforts to explain the problems in the complaint and request that Publishers address them, the amended complaint filed on April 6, 2026, maintained direct infringement (Count II) and CMI claims (Count V) premised on the same skeletal, legally insufficient allegations, and once more had zero examples of allegedly infringing outputs. Dkt. 75-3 at 42.[2] Publishers thus had ample opportunity to cure the defects presented in this motion, but did not. Anthropic now requests that the Court dismiss with prejudice Count II as it pertains to allegedly infringing outputs and Count V in its entirety.

### SUMMARY OF THE ALLEGATIONS

Publishers' Second Amended Complaint alleges direct infringement (Count II) based on purportedly infringing Claude outputs, as well as a DMCA claim (Count V) based upon (1) the alleged removal of CMI during the training of Claude and (2) Anthropic's alleged distribution of lyrics in outputs knowing CMI had been removed. SAC ¶¶ 113-120, 148, 165-168. Publishers generally allege that Claude regurgitates its training data in outputs, *e.g.*, *id.* ¶¶ 108-110, but must concede that Anthropic has implemented technical guardrails designed to prevent Claude from doing so, *e.g.*, *id.* ¶¶ 12, 115-16, 118. These guardrails consist of mechanisms that "modify prompts that could elicit [purportedly] infringing responses, prevent the models from responding to certain prompts," and "prevent the models from generating output that [contains] Publishers' lyrics or other

---

[2] Publishers subsequently amended their complaint again to voluntarily dismiss their vicarious infringement claim (Count IV) following this Court's April 24, 2026 case scheduling order.

copyrighted content." *Id.* ¶ 115. Publishers further concede that Anthropic has "refined and expanded" the guardrails, "include[d] lyrics" in them, and continued to engage in "ongoing development of [its] guardrails," which "may have addressed some of the [allegedly] infringing output" that was "generated prior to *Concord I.*" *Id.* ¶¶ 116-118. They offer no explanation for why these additional guardrails are insufficient, nor any example of lyrics reproduced in a Claude output despite Anthropic's improved guardrails.

With respect to their CMI claim, Publishers allege that Anthropic "intentionally removed and altered [CMI] in the process of training Anthropic's AI models," SAC ¶ 166, and "distribute[s] outputs containing Publishers' lyrics but omitting the required [CMI]," *id.* ¶ 121; *see also id.* ¶¶ 122-123, 167. Publishers allege only removal of CMI from copies of their lyrics, not copies of their entire musical works (which they concede are compositions). *See, e.g.*, *id.* ¶ 166.

Publishers also assert claims against Anthropic for direct infringement based on Anthropic's alleged copying and distribution of Works in Suit via torrenting (Count I) and direct infringement based on Anthropic's alleged copying of Works in Suit during Claude's training (the remainder of Count II). SAC ¶¶ 141, 148. Anthropic contests the merit of these claims but does not move to dismiss them at this time.

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept allegations that are "merely conclusory," nor should it make unwarranted factual deductions or unreasonable inferences. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055-56 (9th Cir. 2008).

## ARGUMENT

**I.    The Court Should Dismiss Publishers' Direct Copyright Infringement Claim (Count II) With Respect To Outputs**

Publishers fail to state a claim for direct infringement in Claude outputs for three reasons: (1) their allegations are conclusory and fail to provide even a single example of an allegedly infringing

output; (2) they fail to identify which of their works were infringed in Claude outputs, as opposed to Claude training; and (3) Publishers' allegations are as equally consistent with non-infringement as they are with infringement. Each ground suffices to dismiss.

> **A.** **Publishers' Conclusory Allegations Fail To Provide A Single Example Of Infringement In A Claude Output**

As this Court recognized in *Concord I*, a copyright plaintiff "must plead some non-speculative facts about what [the defendant] infringed and how," *Becton, Dickinson & Co. v. Cytek Biosciences Inc.* ("*Becton*"), 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (alteration in *Becton*) (quoting *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013)). Mere statements that a party has "copie[d]" or "distribute[d]" works, or infringed copyrights, are nothing more than "'formulaic recitation[s] of the elements of a [copyright] cause of action'" that cannot be considered when assessing the plausibility of a plaintiff's allegations. *Id.* (alteration in *Becton*) (quoting *Twombly*, 550 U.S. at 555). And while Publishers "need not 'specify each and every instance of infringement at the pleading stage,'" they "must submit at least a representative sampling of infringed content," demonstrating "what parts" or "portions" of Publishers' lyrics "were copied" and "in what [Claude output] such copying is manifest." *Id.*; *see Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1173 (N.D. Cal. 2015).

*Becton* demonstrates how this rule functions. There, the complaint alleged that (1) the defendant's "product development and commercialization efforts for [the at-issue] products involved the ***unauthorized copying, reproduction, and distribution*** of, and the unauthorized preparation of derivative works based on" the copyrighted works, and (2) the defendant made "copies altered to remove [plaintiff's] logos and product names and replace them with [the defendant's] names and artwork." *Becton*, 2020 WL 1877707, at *6. Because these allegations did not include any examples of alleged infringement or "what parts" or "portions" of the plaintiff's copyrighted material were copied, the court dismissed the claims. *Id.* at 6-7; *see also Richtek Tech. Corp. v. UPI Semiconductor Corp.*, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011) (allegations that the defendants "made unauthorized copies, prepared derivative works and distributed copies of [plaintiff's] copyright works" are insufficient to state a claim).

Publishers' allegations regarding infringing content in Claude outputs are no different than those in *Becton*:

- "Because Anthropic trains its AI models to memorize Publishers' works, those models *generate outputs copying* Publishers' works in a variety of ways, in plain violation of Publishers' rights." SAC ¶ 10.

- "[D]espite Anthropic's purported adoption of so-called 'guardrails,' the models still *generate output infringing* Publishers' works and are also easily jailbroken to *output Publishers' lyrics* and other copyrighted content, as has been reported in the scientific literature." SAC ¶ 12.

- "Claude has generated and continues to *generate responses reproducing* those lyrics, in violation of Publishers' rights." SAC ¶ 113.

- "Claude *delivers copies* of those lyrics and other copyrighted works in output." SAC ¶ 114.

- Anthropic's "guardrails have failed and Claude has *generated infringing output*, including *output copying* Publishers' lyrics." SAC ¶ 116.

- Anthropic's guardrails "still do not prevent a wide range of prompts and *outputs implicating* Publishers' lyrics" and "will not comprehensively prevent *output copying* lyrics from the much broader universe of copyrighted songs." SAC ¶ 118.

- "The scientific literature confirms that Claude will still *deliver large amounts of copyrighted content as output*." SAC ¶ 119.

- Claude's "initial training would inevitably result in the *unauthorized copying of Publishers' lyrics in Claude outputs*." SAC ¶ 120.

These recitations of the statutory elements without any specific factual allegations or examples of allegedly infringing outputs do not state a claim under *Twombly* and *Iqbal*. Despite asserting infringement of approximately 21,000 Works in Suit, Publishers never identify even a single Claude output of those works, or specify what parts of Publishers' lyrics were copied, when they were copied, who submitted the prompt, or by which Claude model. *See* SAC ¶¶ 10, 12, 113, 114, 116-20. What "conclusory allegations" they do offer are so bare as to be "not entitled to the

assumption of truth," and must be "discounted." *Nielsen v. Thornell*, 101 F.4th 1164, 1169 (9th Cir. 2024); *see also Justice v. Uncharted Labs, Inc.*, 2026 WL 1430232, at *2 (S.D.N.Y. May 21, 2026) (dismissing copyright claim for failure to "identify [any] specific [AI] output substantially similar to any work [plaintiffs] own, relying instead on conclusory allegations relating to their own works" and "general assertion[s]" that the "system is capable of" infringement).

At the parties' July 24, 2026 meet and confer on this motion, Publishers sought to defend the lack of specifics by claiming that they could not identify infringing outputs without discovery, insisting that any such evidence would exclusively be in Anthropic's possession. But Publishers' own complaint in *Concord I* disproves that. There, Publishers were able to include—before any discovery—allegations of infringing outputs, including side-by-side comparisons of Claude outputs and the alleged lyrics to the specific works at issue. *See, e.g.*, *Concord I* Compl. ¶¶ 66-69, 73-74, 76, 78, 87. Publishers generated those examples through prompts that their own investigators and agents submitted to Claude before they filed their initial complaint, a process equally available here. *See id.* ¶¶ 8, 14, 79, 80-83, 93, 97-99, 101, 124, 125, 132, 133. So for good reason, courts have rejected similar arguments in dismissing copyright infringement claims: when an LLM is "publicly accessible," plaintiffs are "capable of demonstrating infringing outputs … if they exist." *Justice*, 2026 WL 1430232, at *2. The fact that Publishers provided multiple examples of supposedly infringing outputs from their own testing in *Concord I*, but failed to give even one in this case, thus further undermines the plausibility of their *Concord II* claims and again supports dismissal.

## B.    Publishers Do Not Identify Which Works Were Infringed In Outputs

Publishers also fail to state a claim because they never allege which of the approximately 21,000 Works in Suit were supposedly infringed *as outputs*, as opposed to inputs to training, despite bringing both theories within a single count for "Direct Copyright Infringement in Training and Output." The conflation of training and output allegations matters because a copyright plaintiff "must identify with specificity which work or works were copied," *Iglesia Ni Cristo v. Cayabyab*, 2019 WL 3997474, at *12 (N.D. Cal. Aug. 23, 2019), and "how," *Becton*, 2020 WL 1877707, at *6, "trac[ing] specific copyrighted works to specific" means of infringement, *In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 913 (N.D. Cal. 2025). Here, Publishers allege

only that Anthropic infringed the works contained in "Exhibit B" for purposes of Count II, despite Count II encompassing two distinct means of copying: reproduction of lyrics for "training" and reproduction of lyrics in Claude "output." SAC ¶ 148. Publishers never distinguish which works in Exhibit B were supposedly copied as training inputs versus which were reproduced as outputs. Rather, when discussing outputs, the Second Amended Complaint never even alleges that *any* output contained lyrics to one of the works in Exhibit B; Publishers instead assert only that (unspecified) outputs contained "Publishers' lyrics" or "copyrighted content" generally, *id.* ¶¶ 116, 118-120. The failure to identify the works allegedly involved in infringing outputs deprives Anthropic of the notice necessary to defend against this claim, warranting dismissal.

### C.      Publishers' Output Allegations Are Equally Consistent With Noninfringement

"When there are 'two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are "merely consistent with" [their] favored explanation but are also consistent with the alternative explanation.'" *Google*, 809 F. Supp. 3d at 910 (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)); *see also Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-997 (9th Cir. 2014); *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026). In that situation, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Google*, 809 F. Supp. 3d at 910 (quoting *Century Aluminum*, 729 F.3d at 1108); *Eclectic Props.*, 751 F.3d at 997.

Publishers' allegations are just as consistent with Claude models not outputting infringing material as with them doing so. The complete absence of specific allegations or representative examples is critical, because not all reproduction or distribution of a copyrighted work violates the Copyright Act. For example, to allege infringing copying "a copyright owner must plausibly allege that the infringing work is 'substantially similar' to the copyrighted work." *Jangle Vision, LLC v. Alexander Wang, Inc.*, 2023 WL 7042518, at *1 (9th Cir. Oct. 26, 2023); *see Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 778 (N.D. Cal. 2024) (dismissing claim for failure to "explain what the outputs entail or allege that any particular output is substantially similar … to their books").

Publishers fail to provide a single allegation that any Claude output is identical or substantially similar to one of the Works in Suit, let alone any examples demonstrating that is the case. Publishers have also not provided the copyrighted lyrics to *any* of the songs allegedly copied here (despite doing so in *Concord I*). As a result, there is no way to even judge whether any alleged copy is substantially similar to a Work in Suit.

The best that Publishers can muster is that Claude "deliver[s] *large amounts* of copyrighted *content*." SAC ¶ 119. But that vague allegation says nothing about whether Claude delivers any aspect of *Publishers'* works (or even lyrics generally) as opposed to other forms of content. Reproducing "large amounts" of unspecified "content" is also not the same as reproducing identical or substantially similar copies of a specific copyrighted work, as would be necessary to allege infringement. Thousands of de minimis reproductions might add up to a "large amount" of "content," for example, but they still would not constitute infringement of any one work. *See Newton v. Diamond*, 388 F.3d 1189, 1192-1196 (9th Cir. 2004). The comparison to *Concord I* is again instructive. That complaint provided specific examples of outputs to try to substantiate the allegation that "Claude's output is likewise *identical or substantially and strikingly similar*" to the lyrics at issue. *Concord I* Compl. ¶ 70; *see id.* ¶ 65. *Concord I* then also provided the alleged lyrics to the songs Anthropic supposedly copied that could be compared to those example outputs. *Compare Concord I* SAC Ex. B, Dkt. 715 (setting forth the alleged lyrics of works), *with* SAC Ex. B, Dkt. 93-2 (only listing alleged titles of works). The complaint here does neither.

Publishers' allegations are thus "consistent" with an "innocuous alternative explanation." *Eclectic Props.*, 751 F.3d at 996. So Publishers must plead sufficient facts to "exclude" the plausibility of that lawful alternative. *Id.* They did not, providing an independently sufficient basis to dismiss their direct infringement claim with respect to outputs.

*   *   *

Publishers' conclusory allegations that Claude "copies," "reproduce[s]," "delivers," and "infring[es]" Publishers' lyrics fail to plausibly state a claim that Anthropic has infringed Publishers' works in Claude outputs. Indeed, the Second Amended Complaint all but confesses that its allegations fall short, resorting to promising that "[d]iscovery will reveal" evidence of "Claude

generating output copying lyrics." SAC ¶ 119; *see id.* ¶ 12. But this is precisely the kind of "fishing expedition" that *Iqbal* and *Twombly* forbid. *Kabir v. Flagstar Bank, FSB*, 2016 WL 10999326, at *4 (C.D. Cal. May 11, 2016); *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021). Publishers may not rely upon "the speculative promises of discovery to survive a motion to dismiss." *Kabir*, 2016 WL 10999326, at *4; *see Justice*, 2026 WL 1430232, at *2 (rejecting argument that "discovery is required" to uncover infringing LLM outputs).

Beyond the alleged reproduction of Publishers' lyrics, the *Concord II* complaint also briefly refers to two other categories of outputs: (1) "'new' or 'original' songs" and (2) songs "in the style of specific songs or artists." SAC ¶ 118. These allegations suffer from all of the defects described above—Publishers have not, for instance, alleged any specific examples of supposedly "new," "original," or stylistically similar outputs—and should be dismissed for the same reasons. *See supra* pp.5-7. Regardless, neither of these allegations could constitute infringement: "[S]tyle is not copyrightable," *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1045 (N.D. Cal. 2025), and, by definition, "new" and "original" lyrics do not copy anything from a copyrighted work, so cannot form the basis for copyright violations, *see* 17 U.S.C. § 106.

## II.   The Court Should Dismiss Publishers' DMCA Claim (Count V)

Publishers allege that Anthropic (1) violated Section 1202(b)(1) of the DMCA by "intentionally remov[ing]" CMI when copying their lyrics to train Claude, SAC ¶ 166, and (2) violated Section 1202(b)(3) of the DMCA by outputting Publishers' lyrics knowing CMI had been removed, *id.* ¶ 167. Both theories fail because the DMCA only prohibits removal of CMI from entire copyrighted **works**. Here, that means Publishers' musical compositions, not solely the lyrics within them. But Publishers never allege that Anthropic possessed those compositions, much less removed CMI from them. Publishers' distribution claim separately fails for the same reasons as their other output-based claims—because Publishers do not identify **any** Claude output containing their lyrics, they cannot plausibly allege that Anthropic distributed their lyrics knowing CMI had been removed.

### A.   Publishers Do Not Plead That Anthropic Possessed Their Copyrighted Works As A Whole

The DMCA only prohibits removal of CMI from copyrighted works as a whole. The statute

defines CMI as certain information "conveyed in connection with" a "*work*." 17 U.S.C. § 1202(c). And courts recognize that the DMCA was "intended to prevent the 'defac[ing] or deform[ing]' of protected *works*." *Falkner v. General Motors LLC*, 393 F. Supp. 3d 927, 938-939 (C.D. Cal. 2018). Courts evaluating DMCA claims therefore ask whether CMI was removed from a plaintiff's complete "product or original work." *See Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022); *Andersen*, 744 F. Supp. 3d at 970. Where the defendant never possessed the complete work to begin with, there is nothing from which CMI could have been "removed" within the meaning of Section 1202(b)(1).

Publishers make clear that their copyrighted works are musical compositions as a whole, not the lyrics contained within them. For example, they allege that they "own or control the copyrights to millions of the most well-known and beloved *musical compositions* of all time." SAC ¶ 46. Publishers themselves recognize that the lyrics to a song are not the same as the copyrighted musical composition, alleging that "[t]he *text* that Anthropic copies" in training Claude "includes *the lyrics to* innumerable musical compositions for which Publishers own or control the copyrights." *Id.* ¶ 92; *see also id.* ¶ 164 (describing Publishers' copyrighted "musical compositions, including the song lyrics *contained therein*"); *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) ("[M]usic is comprised of a large array of elements," including "melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics."). These allegations confirm that Anthropic never possessed copyrighted "works" from which to remove CMI. 17 U.S.C. § 1202(b)(1). Because Publishers' distribution claim is premised upon a "work" from which CMI has been removed, it fails for the same reason. 17 U.S.C. § 1202(b)(3).

**B.    Publishers Do Not Plausibly Allege That Anthropic Distributed Their Lyrics Knowing CMI Had Been Removed**

Publishers also cannot state a Section 1202(b)(3) claim because they have not identified copies of their lyrics in Claude outputs. Publishers' theory is that Anthropic "distribute[s] outputs containing Publishers' lyrics but omit[s] the required [CMI]," SAC ¶ 121; *see also id.* ¶¶ 122–123, 167. As explained, Publishers do not identify a single example of a Claude output containing their lyrics and do not specify which of their works supposedly appeared in Claude outputs. *See supra*

pp.5-8. Without adequately alleging that Claude output Publishers' lyrics at all, Publishers necessarily fail to allege that Anthropic distributed their lyrics knowing CMI had been removed. That failure is even more acute given the DMCA's identicality requirement, which provides that the material reproduced without CMI must be "identical to a plaintiff's work." *See Andersen*, 744 F. Supp. 3d at 971 ("Because there are no allegations that any output from Stable Diffusion was identical to a plaintiff's work, the DMCA section 1202(b) claim fails as well."); *Doe 1 v. GitHub, Inc.*, 2024 WL 1643691, at *2 (N.D. Cal. Apr. 15, 2024) (dismissing Section 1202(b) claim where "there was no showing of identical output of any entire work"). Plaintiffs have (again) offered no allegation that Claude produced outputs identical to the Works in Suit.  *Supra* pp.8-9.

## III.        The Court Should Dismiss These Claims With Prejudice

The Court should dismiss Publishers' direct infringement output claim and CMI claim with prejudice. "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). Courts therefore routinely dismiss claims with prejudice where the plaintiff, like Publishers, "has already had an opportunity to cure [a] deficiency and has failed to do so." *Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688, at *8 (N.D. Cal. Feb. 24, 2022); *accord Imperial v. Ramsey*, 2010 WL 2765540, at *3 (N.D. Cal. July 13, 2010).

Here, Anthropic placed Publishers on notice of the deficiencies identified in this motion after Publishers filed their initial complaint, writing:

> Publishers' Complaint lacks any allegations of specific examples of outputs that purportedly infringe Publishers' works …. If there are any additional allegations or amendments that you believe would cure the defects in your claims, please let us know immediately …. If you do not amend your complaint, we will understand that Publishers have pleaded their best case, and that we, and more importantly the Court, can evaluate that complaint to conclusively determine whether it can plausibly state a claim for outputs-based infringement under applicable legal standards.

Burrell Decl. Ex. A at 1-2. Anthropic then reiterated these concerns at the parties' March 23, 2026 meet and confer, though none should have been news to Publishers, as *Concord II* involves the same counsel representing the same corporate families as *Concord I*.

After receiving Anthropic's letter and the parties' meet and confer, Publishers amended their

complaint, but they took no steps to cure the glaring pleading deficiencies Anthropic identified. *See* Dkts. 75-3, 93-3 (redlines of initial and amended complaints). If Publishers had a basis to allege any examples of supposedly infringing outputs, they could have offered them in their amendment. Their failure to do so, and insistence at the latest meet and confer that they cannot provide examples without entering discovery, confirms dismissal with prejudice is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice the portion of Publishers' infringement claim premised upon outputs in Count II and Count V in full.

Date: August 3, 2026                    /s/ *Sonal N. Mehta*

ARI HOLTZBLATT (SBN 354361)            SONAL N. MEHTA (SBN 222086)
ari.holtzblatt@wilmerhale.com          sonal.mehta@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)      **WILMER CUTLER PICKERING**
robin.burrell@wilmerhale.com           **HALE AND DORR LLP**
**WILMER CUTLER PICKERING**            2600 El Camino Real, Suite 400
**HALE AND DORR LLP**                  Palo Alto, CA 94306
2100 Pennsylvania Ave, NW              Telephone: (650) 858-6000
Washington, DC 20037
Telephone: (202) 663-6000              LOUIS W. TOMPROS (*Pro Hac Vice*)
                                       louis.tompros@wilmerhale.com
                                       **WILMER CUTLER PICKERING**
                                       **HALE AND DORR LLP**
                                       60 State Street
                                       Boston, MA 02109
                                       Telephone: (617) 526-6220

                                       *Attorneys for Defendant*
                                       **ANTHROPIC PBC**