**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Corey Miller
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
jeff@oandzlaw.com
corey@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CONCORD MUSIC GROUP, INC., ET AL.,

Plaintiffs,

v.

ANTHROPIC PBC, DARIO AMODEI, AND BENJAMIN MANN,

Defendants.

Case Number: 5:26-cv-00880-EKL-SVK

**PLAINTIFFS' OPPOSITION TO DEFENDANT DARIO AMODEI'S PARTIAL MOTION TO DISMISS**

Judge Eumi K. Lee
Magistrate Judge Susan van Keulen

Hearing Date: November 4, 2026
Time: 10:00 AM PT
Courtroom: 7

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

LEGAL STANDARD ........ 5

ARGUMENT ........ 5

I. Publishers plausibly allege Dr. Amodei is directly liable for copyright infringement........ 5

A. Publishers adequately plead that Dr. Amodei authorized and directed Anthropic's direct infringement of Publishers' works via torrenting. ........ 5

B. Publishers adequately plead that Dr. Amodei directly caused infringement of Publishers' works via torrenting. ........ 8

C. None of the cases cited by Dr. Amodei support dismissal of Publishers' direct infringement claim against him. ........ 11

II. In the alternative, Publishers should be permitted to amend their Complaint. ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Cases**

*APL Microscopic, LLC v. Steenblock*,
2022 WL 4830687 (9th Cir. Oct. 3, 2022) ........ 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1001 (N.D. Cal. 2025) ........ 1, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Bell v. Moawad Group, LLC*,
326 F. Supp. 3d 918 (D. Ariz. 2018) ........ 7

*Bell v. Wilmott Storage Servs., LLC*,
12 F.4th 1065 (9th Cir. 2021) ........ 9, 10

*Blackstone Int'l, Ltd. v. E2 Ltd.*,
2022 WL 16553034 (W.D. Wash. Oct. 31, 2022) ........ 10

*Clayton v. Automated Gaming Techs., Inc.*,
2014 WL 1334005 (E.D. Cal. Apr. 3, 2014) ........ 6, 8

*Comm. for Idaho's High Desert, Inc. v. Yost*,
92 F.3d 814 (9th Cir. 1996) ........ 1, 6, 7

*Concord Music Grp., Inc. v. Anthropic PBC*,
2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) ........ 12

*Creech v. Tewalt*,
84 F.4th 777 (9th Cir. 2023) ........ 12

*Daybreak Game Co. LLC v. Takahashi*,
2025 WL 2691161 (S.D. Cal. Sept. 19, 2025), *reconsideration denied*, 2025 WL 3443159 (S.D. Cal. Dec. 1, 2025) ........ 6

*DISH Network L.L.C. v. Jadoo TV, Inc.*,
2020 WL 5816579 (N.D. Cal. Sept. 30, 2020) ........ 5, 6, 7, 10

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ........ 8

*Grover Prods. Co. v. Air Horns of Tex., LLC*,
2018 WL 6118435 (C.D. Cal. Oct. 17, 2018) ........ 7

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ........ 12

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........ 12

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 5

*Marina Vape, LLC v. Nashick*,
2017 WL 3579874 (C.D. Cal. July 7, 2017) ........ 6

*Novell, Inc. v. Unicom Sales, Inc.*,
2004 WL 1839117 (N.D. Cal. Aug. 17, 2004) ........ 8

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013) ........ 11

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657, 666 (9th Cir. 2017) ........ 9

*Rivas v. Kijakazi*,
2023 WL 8006846 (N.D. Cal. Nov. 17, 2023) ........ 12

*Riverdeep Interactive Learning, Ltd. v. MPS Multimedia, Inc.*,
2006 WL 3797962 (N.D. Cal. Dec. 22, 2006) ........ 8

*Robinson v. Binello,*
771 F. Supp. 3d 1114 (N.D. Cal. 2025) ........ 10, 11

*Routt v. Amazon.com, Inc.*,
2012 WL 5993516 (W.D. Wash. Nov. 30, 2012) ........ 11

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985) ........ 1, 6

*Urban Accessories, Inc. v. Iron Age Design and Imp., LLC*,
2015 WL 1510027 (W.D. Wash. Apr. 1, 2015) ........ 8

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019) ........ 9

*Welgus v. TriNet Grp., Inc.,*
2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ........ 13

*Willis v. Tennant*,
2025 WL 2978714 (S.D. Cal. Oct. 22, 2025) ........ 11, 12

**Other Authorities**

*Anthropic Eyes $2 Trillion In October IPO, A Record-Breaking Debut*, FORBES (Aug. 13, 2026), https://www.forbes.com/sites/jonmarkman/2026/08/13/anthropic-eyes-2-trillion-in-october-ipo-a-record-breaking-debut/ ........ 2

*Anthropic raises $65B in Series H funding at $965B post-money valuation*, ANTHROPIC (May 29, 2026), https://www.anthropic.com/news/series-h; Jon Markman ........ 2

**Rules**

Fed. R. Civ. P. 8 ........ 1

## INTRODUCTION

Defendant Dario Amodei, Anthropic's founder and Chief Executive Officer, personally directed numerous Anthropic employees to use BitTorrent to download and distribute millions of pirated copies of books from illegal pirate libraries Library Genesis ("LibGen") and Pirate Library Mirror ("PiLiMi"). Those books contained hundreds or more of Plaintiffs' ("Publishers") copyrighted musical compositions. Dr. Amodei torrented pirated content in this manner for years—dating back to his torrenting of LibGen to train AI models while at OpenAI in 2019 and 2020, continuing when he defected from OpenAI and founded Anthropic in 2021, up through his and his employees' torrenting of millions of illegal copies of books from LibGen in June 2021 and PiLiMi in July 2022, and potentially more.

Publishers now seek to hold Dr. Amodei responsible for his personal role in this mass infringement via torrenting. Publishers are learning the facts of Dr. Amodei's infringing conduct only through unsealed materials from the *Bartz v. Anthropic PBC* litigation and have not yet had the opportunity to fully develop the record of his infringement through discovery. Accordingly, Publishers have alleged that Dr. Amodei is directly liable for reproducing and distributing copies of Publishers' lyrics via torrenting from pirate libraries LibGen and PiLiMi, and, in the alternative, contributorily liable for that torrenting, as permitted by Federal Rule of Civil Procedure 8.

Dr. Amodei's motion to dismiss seeks to cut the legs out from underneath Publishers' direct infringement claim before Publishers have the opportunity to fully develop it. But Dr. Amodei's motion is premised on a fundamental misunderstanding of copyright liability.

First, Dr. Amodei ignores well-established law that, as Anthropic's CEO, he is directly liable for Anthropic's direct copyright infringement when he "authorizes," "directs," or "participates" in the infringing torrenting. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)). Second, Dr. Amodei is separately directly liable under normal proximate causation principles when he has directly caused the infringing torrenting. Publishers have plausibly alleged facts to support Dr. Amodei's direct liability under each of these two bases.

Accordingly, Dr. Amodei's motion to dismiss should be denied in full.

## BACKGROUND

Dario Amodei is Anthropic's founder and Chief Executive Officer. Second Am. Compl. ("SAC") ¶¶ 5, 44, 102, ECF No. 93. Dr. Amodei's company Anthropic is "in the business of developing, operating, selling, and licensing access to AI programs." *Id.* ¶ 56. Anthropic was founded in 2021 by "[Dr.] Amodei, Benjamin Mann, and a group of other individuals who had defected from OpenAI." *Id.* Anthropic is "valued at $380 billion or more." *Id.*[1] But "[d]espite its multibillion-dollar valuation," Anthropic "refuses to pay a cent for the vast amounts of copyrighted content—including Publishers' musical compositions—it takes without permission or credit to build its business." *Id.*

One of the ways Dr. Amodei and his co-defendants Benjamin Mann and Anthropic have unlawfully copied Publishers' musical compositions is by torrenting copies of those works on a massive scale from notorious "pirate library" websites. *See id.* ¶¶ 59–80.

Pirate libraries are large collections of illegal copies of pirated text that can be found on the internet. *Id.* ¶ 60. One such pirate website, Library Genesis ("LibGen"), is among "the world's biggest and most notorious online infringement operations" and "maintains an enormous collection of stolen books and other written works." *Id.* ¶ 61. "At least two U.S. federal courts have found LibGen liable for willful copyright infringement and issued broad permanent injunctions against the website," and the Office of the U.S. Trade Representative has listed LibGen on its "Review of Notorious Markets for Counterfeiting and Piracy" since at least 2016. *Id.* Another pirate website, Pirate Library Mirror ("PiLiMi"), maintains a similarly massive collection of pirated works. *Id.* ¶¶ 5, 60, 62. PiLiMi's operators have "have proudly declared 'We deliberately violate the copyright law in most countries.'" *Id.* ¶ 62. LibGen and PiLiMi contain millions of illegal copies of pirated books spanning every genre imaginable—including songbooks, sheet music collections, and other

[1] Shortly after Publishers filed their Second Amended Complaint, Anthropic announced that its valuation had tripled to $965 billion; today, Anthropic is reportedly valued at $2 trillion or more. *See Anthropic raises $65B in Series H funding at $965B post-money valuation*, ANTHROPIC (May 29, 2026), https://www.anthropic.com/news/series-h; Jon Markman, *Anthropic Eyes $2 Trillion In October IPO, A Record-Breaking Debut*, FORBES (Aug. 13, 2026), https://www.forbes.com/sites/jonmarkman/2026/08/13/anthropic-eyes-2-trillion-in-october-ipo-a-record-breaking-debut/.

books of song lyrics that contain Publishers' copyrighted musical compositions. *Id.* ¶¶ 60, 70, 75.

Dr. Amodei and his co-defendants "know well" that these pirate libraries "do not acquire works through lawful channels that compensate creators, publishers, and other rightsholders." *Id.* ¶ 60. "Rather, these infringing websites make illicit digital copies of works that are available for purchase or rental or by subscription; actively encourage their users to upload the same; and make these pirated copies available for free to those willing to risk infringement themselves." *Id.*

In order to download, copy, and distribute the LibGen and PiLiMi pirate datasets, infringers employ BitTorrent, a peer-to-peer filesharing protocol "infamously used" for copyright infringement. *Id.* ¶¶ 64, 66. BitTorrent utilizes a decentralized model where files are copied and distributed directly between peers in pieces. *Id.* ¶ 65. Importantly, as soon as a peer downloads a piece of a file, it immediately becomes a distributor of that piece to others, creating a viral "swarm" of infringement to a limitless universe of other users. *Id.* ¶¶ 7–8, 65. Today, BitTorrent is "synonymous with copyright infringement, as pirated copies of books, other written works, sound recordings, movies, and other copyrighted works proliferate on the network." *Id.* ¶ 66.

Dr. Amodei has long been familiar with these pirate libraries and exploiting their infringing content. Before founding Anthropic, Dr. Amodei led OpenAI's efforts to illegally torrent these pirate libraries between 2019 and 2020. *Id.* ¶ 59. As OpenAI's Vice President of Research, Dr. Amodei "was closely involved in training that company's AI models." *Id.* ¶ 102. But "[r]ather than steer clear of this infamously pirated content," he "sought out these pirate libraries as sources of material when employed at OpenAI." *Id.* ¶ 63. Indeed, Dr. Amodei specifically discussed at that time "downloading datasets from LibGen and exploiting those datasets for AI training" with his future Anthropic co-founders Mr. Mann and Tom Brown. *Id.* Dr. Amodei "participat[ed]" in Mr. Mann's use of BitTorrent to "obtain the contents of these pirate libraries." *Id.* ¶ 64.

Dr. Amodei continued to unlawfully exploit the contents of these pirate websites as one of Anthropic's founders. *See id.* ¶¶ 67–78. When he founded Anthropic in 2021, he and his co-founders "continued to illegally torrent copyrighted works from multiple pirate libraries—including hundreds or more books containing Publishers' copyrighted musical compositions." *Id.* ¶ 67. At that time, Dr. Amodei personally "played a hands-on role in the development of the

company's AI models," and Anthropic's "policy formally required approval from senior leadership"—including, specifically, Dr. Amodei—"before obtaining or using new datasets such as LibGen." *Id.* ¶ 71.

In June 2021, Dr. Amodei "discussed" with Mr. Mann "whether to download [millions of copyrighted] works via torrenting from LibGen." *Id.* Dr. Amodei and Anthropic's Head of Pretraining had separately "discussed Anthropic's exploitation of LibGen, including estimating the 'cost to buy all the books in libgen.'" *Id.* But despite Anthropic's own Archive Team identifying LibGen as a "blatant violation of copyright," and Dr. Amodei himself understanding that LibGen was "sketchy," Dr. Amodei nevertheless "approved the torrenting of those books from LibGen . . . without payment." *Id*. Subsequently, at Dr. Amodei's "direction," Mr. Mann torrented five million copies of pirated books from LibGen. *Id.* ¶¶ 70–71. Throughout, "Mr. Mann did not act alone"—Dr. Amodei "personally discussed, directed, and authorized this illegal torrenting." *Id.* ¶¶ 5, 71.

Dr. Amodei's involvement in this illegal torrenting did not end with LibGen. In July 2022, after Mr. Mann discovered the pirate library PiLiMi, Dr. Amodei "approv[ed]" and "direct[ed]" two Anthropic employees to torrent millions of additional illegal copies of copyrighted works from that pirate website. *Id.* ¶¶ 72–73, 77. "Again, Dr. Amodei, Mr. Mann, and other Anthropic leadership discussed whether or not to torrent these files from PiLiMi," and Dr. Amodei ultimately "authorized the decision to proceed with the torrenting" of the PiLiMi pirate library. *Id.* ¶ 73.

For both LibGen and PiLiMi, Dr. Amodei "personally directed, approved, and controlled this torrenting activity." *Id.* ¶ 74. Dr. Amodei, along with Mr. Mann, was the "primary participant[] and moving force[] behind this illegal torrenting." *Id.* This illegal torrenting that was done at Dr. Amodei's "direction" and with his "express approval" included downloading and simultaneously distributing hundreds or more books containing sheet music and song lyrics to Publishers' copyrighted musical compositions that are the subject of this case. *Id.* ¶¶ 74, 78–79, Ex. A.

Dr. Amodei "directed" and "approved" this illegal torrenting in order to amass a vast stash of copyrighted works, including Publishers' works, so that his company could catch up with its entrenched AI competitors, including OpenAI. *Id.* ¶ 85. He made that decision despite knowing that these pirate libraries were "not legal sources of copyrighted works." *Id.* ¶ 86. Indeed, Dr.

Amodei admitted internally that his company "'ha[d] many places from which' it could have legally purchased copyrighted works for training." *Id.* ¶ 85. But he chose to illegally torrent Publishers' works instead, to avoid—in his words—a "legal/practice/business slog." *Id.* ¶¶ 67, 85.

## LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "do not require heightened fact pleading of specifics" or "detailed factual allegations." *Twombly*, 550 U.S. at 555, 570.

Rather, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Unless allegations fail to "raise a right to relief above the speculative level," dismissal is improper. *Twombly*, 550 U.S. at 555. Likewise, "evidence is not required at the motion to dismiss stage." *APL Microscopic, LLC v. Steenblock*, 2022 WL 4830687, at *1 (9th Cir. Oct. 3, 2022).

## ARGUMENT

### I. Publishers plausibly allege Dr. Amodei is directly liable for copyright infringement.

As Anthropic's founder and CEO, Dr. Amodei can be liable for direct infringement "under two theories." *DISH Network L.L.C. v. Jadoo TV, Inc.*, 2020 WL 5816579, at *3 (N.D. Cal. Sept. 30, 2020). First, as a corporate officer of Anthropic, Dr. Amodei is personally liable for direct infringement by Anthropic that he authorized or directed—a well-established basis for direct liability that Dr. Amodei's motion ignores entirely. *See id.* Second, Dr. Amodei is also directly liable for infringement that he himself caused—as Publishers allege here. *See id.* at *4.

Publishers plausibly allege facts to support both of these bases for Dr. Amodei's direct liability. Each provides a separate, independent ground for denying Dr. Amodei's motion to dismiss.

#### A. Publishers adequately plead that Dr. Amodei authorized and directed Anthropic's direct infringement of Publishers' works via torrenting.

First, as an owner and corporate officer of Anthropic, Dr. Amodei is personally liable for

Anthropic's direct infringement of Publishers' works because he authorized and directed it.

The Ninth Circuit has recognized that "a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Yost*, 92 F.3d at 823 (quoting *Transgo*, 768 F.2d at 1021). Courts in this Circuit consistently apply the *Yost* rule to copyright infringement cases. *DISH Network*, 2020 WL 5816579, at *4 (collecting cases).

In particular, "[c]orporate officers may be held personally liable for copyright infringement if they authorize or direct or participate in the unlawful activity, even when acting as agents of the corporation." *Clayton v. Automated Gaming Techs., Inc.*, 2014 WL 1334005, at *5 (E.D. Cal. Apr. 3, 2014) (citation omitted). "Put differently, district courts within the Ninth Circuit consistently hold that corporate officers, shareholders, and employees are personally liable for a corporation's copyright or trademark infringements when they are a moving, active, conscious force behind the corporation's infringement." *Daybreak Game Co. LLC v. Takahashi*, 2025 WL 2691161, at *2 (S.D. Cal. Sept. 19, 2025), *reconsideration denied*, 2025 WL 3443159 (S.D. Cal. Dec. 1, 2025) (internal quotation marks and citation omitted). "A corporate officer is the moving, active, conscious force behind the infringing activity if he or she directs, controls, ratifies, participates in, or is the moving force behind the infringing activity." *Marina Vape, LLC v. Nashick*, 2017 WL 3579874, at *7 (C.D. Cal. July 7, 2017) (internal quotation marks and citations omitted).

Here, Publishers' allegations easily establish that Dr. Amodei is a corporate officer who "authorized or directed" Anthropic's illegal torrenting of Publishers' works from pirate libraries LibGen and PiLiMi, thereby establishing his individual liability. *Yost*, 92 F.3d. at 823. Dr. Amodei is Anthropic's founder and the company's CEO. SAC ¶¶ 5, 44, 102. In 2021, he played a "hands-on role in the development of Anthropic's AI models," and company policy required his approval before downloading any new datasets. *Id.* ¶¶ 70–71. In June 2021, Dr. Amodei discussed with his Anthropic co-founder Mr. Mann whether to torrent a massive trove of pirated books from the pirate website LibGen, and Dr. Amodei subsequently approved and directed Mr. Mann's torrenting of five million books from that pirate library. *Id.* Separately, in July 2022, Dr. Amodei and Mr. Mann discussed whether to torrent a second cache of pirated books from PiLiMi, and Dr. Amodei

authorized and directed two Anthropic employees to torrent millions of additional pirated books from that website. *Id.* ¶ 73. Publishers' copyrighted musical compositions were included among the pirated books that Dr. Amodei directed be torrented from LibGen and PiLiMi. *Id.* ¶¶ 74, 78.

Dr. Amodei approved and ordered this illegal torrenting despite describing LibGen as "sketchy" and understanding that the LibGen and PiLiMi shadow libraries contained pirated copies of copyrighted books. SAC ¶¶ 71, 73. He authorized and participated in this torrenting "to obtain a vast trove of copyrighted material" in order "to catch up with Anthropic's already entrenched AI competitors" like OpenAI. *Id.* ¶ 85. Despite admitting there were "'many places from which' [Anthropic] could have legally purchased copyrighted works for training," Dr. Amodei instead made the decision to illegally torrent millions of books, to avoid, in his own words, the "legal/practice/business slog" of paying for those copyrighted works. *Id.* ¶¶ 67, 85. By acknowledging his desire to avoid the "slog" of lawful acquisition, Dr. Amodei betrayed not only his willful state of mind but also his purposeful and affirmative decision to direct his co-founder and employees to copy from unauthorized sources. These allegations plainly suffice to establish that Dr. Amodei "authorize[d]," "direct[ed]," or "participate[d]" in the infringing torrenting. *See Yost*, 92 F.3d at 823.

Courts in this Circuit routinely find personal liability in similar circumstances. *See, e.g.*, *DISH Network*, 2020 WL 5816579, at *5 (denying individual defendant's motion to dismiss copyright infringement claims where plaintiff's allegations "raise a plausible inference that [defendant] authorized, directed, or participated in the alleged infringement"); *Bell v. Moawad Group, LLC*, 326 F. Supp. 3d 918, 930–31 (D. Ariz. 2018) (granting plaintiff summary judgment on copyright infringement claim against individual defendant who was "president and sole owner" of corporate defendant and who "found the [infringing] image at issue and asked another employee to post it"); *Grover Prods. Co. v. Air Horns of Tex., LLC*, 2018 WL 6118435, at *3 (C.D. Cal. Oct. 17, 2018) (denying individual defendant's motion to dismiss copyright infringement claim because it is "more than 'plausible' that [defendant] is the dominant influence at [corporate defendant], given that he is the president"); *Urban Accessories, Inc. v. Iron Age Design and Imp., LLC*, 2015 WL 1510027, at *4 (W.D. Wash. Apr. 1, 2015) (denying individual defendant's motion to dismiss

copyright infringement claim where plaintiff alleged that defendant "personally directed or otherwise actively participated in the decision to make" infringing products); *Clayton*, 2014 WL 1334005, at *5 (denying individual defendants' motions to dismiss copyright infringement claim where plaintiff alleged those defendants "personally directed the infringing activities"); *Riverdeep Interactive Learning, Ltd. v. MPS Multimedia, Inc.*, 2006 WL 3797962, at *5 (N.D. Cal. Dec. 22, 2006) (denying individual defendant's motion to dismiss copyright infringement claim where plaintiff alleged that defendant was corporate defendant's "[p]resident and CEO" and "directs, controls and ratifies the actions of [corporate defendant] including the unlicensed and unauthorized replication and distribution of [plaintiff's work]"); *Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004) (granting plaintiff summary judgment on copyright infringement claim against individual defendant who was president of defendant company, "oversaw [company's] acquisition, advertisement, and distribution of [plaintiff's] products, and supervised [company] employees.").

For the same reasons, Publishers plausibly allege Dr. Amodei's direct liability here. That alone is sufficient reason to deny Dr. Amodei's motion to dismiss.

### B. Publishers adequately plead that Dr. Amodei directly caused infringement of Publishers' works via torrenting.

Second, Publishers have also adequately pled facts to satisfy each element of a direct infringement claim against Dr. Amodei himself, providing a second, independent basis for liability.

"A claim of direct copyright infringement has two requirements: (1) ownership of a valid copyright and (2) unlawful copying," as Dr. Amodei recognizes. Mot. 3 (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Dr. Amodei does not challenge the first element, Publishers' ownership of valid copyrights. In any event, Publishers clearly allege that they "own or control the copyrights to millions of the most well-known and beloved musical compositions," including in particular the at least 714 works that Dr. Amodei and his co-defendants illegally torrented from LibGen and PiLiMi, each of which has been registered with the U.S. Copyright Office, and each of which is identified in Ex. A to the Complaint. SAC ¶¶ 46, 55, 78, Ex. A.

As for the copying element, Dr. Amodei is wrong to suggest that he can be held directly liable for illegally torrenting Publishers' works ***only*** if he personally did that torrenting himself. Accepting Dr. Amodei's argument would allow an infringer to escape direct liability by simply ordering an underling to carry out the infringement on his behalf. That is not the law.

The Ninth Circuit holds that a defendant is directly liable when he engages in conduct that is "the direct cause of the infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citation omitted). Commonly referred to as the "volitional-conduct requirement," this "does not really mean an act of willing or choosing or an act of deciding, but merely the unremarkable proposition that proximate causation historically underlies copyright infringement liability no less than other torts." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021) (cleaned up, citation omitted). "The distinction between active and passive participation" is "central to the legal analysis." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (quotation omitted). "[D]irect copyright liability . . . arises when [defendants] are ***actively involved*** in the infringement." *Id.* (emphasis original). For example, "one who 'exercised control' or 'selected any material for upload, download, transmission, or storage' has acted volitionally" and is therefore directly liable for infringement. *Bell*, 12 F.4th at 1081 (quoting *VHT*, 918 F.3d at 732).

Here, Publishers plausibly allege direct infringement by Dr. Amodei. Publishers allege in detail that Dr. Amodei was "actively involved" in the illegal torrenting of Publishers' works from LibGen and PiLiMi. *VHT*, 918 F.3d at 732. In particular, Dr. Amodei discussed in advance whether to engage in this torrenting, SAC ¶¶ 71, 73; he subsequently "directed" co-defendant Mr. Mann to torrent five million copies of pirated books from LibGen, including Publishers' works, *id.* ¶ 71; he likewise "direct[ed]" two Anthropic employees to torrent millions of additional pirated works from PiLiMi, including Publishers' works, *id.* ¶ 73; and he ultimately "approved" and "authorized" this torrenting of Publishers' works, *id.* ¶¶ 71–74. Dr. Amodei also "selected" the infringed material for "upload, download, [and] transmission," *VHT*, 918 F.3d at 732, given that he discussed, approved, and directed which specific pirate libraries to torrent. SAC ¶¶ 71–74, 85. Dr. Amodei's instructing his employees to torrent the LibGen and PiLiMi pirate libraries is "the most important cause" of the reproduction and distribution of Publishers' works via torrenting. *Bell*, 12 F.4th at

1082 (quotation omitted). "Said in the hornbook language of proximate cause, it was reasonably foreseeable that [Dr. Amodei's] actions would result in copyright infringement." *Blackstone Int'l, Ltd. v. E2 Ltd.*, 2022 WL 16553034, at *10 (W.D. Wash. Oct. 31, 2022). Accordingly, he is directly liable.

The *DISH Network v. Jadoo TV* case is instructive. 2020 WL 5816579 (N.D. Cal. Sept. 30, 2020). In that case, plaintiff DISH Network brought suit for copyright infringement against corporate defendant Jadoo TV and its founder, CEO, and president Sajid Sohail, alleging that the defendants had illegally transmitted DISH's exclusively licensed television content. *Id.* at *1. In particular, DISH alleged that an individual in Pakistan, Haseeb Shah, had transmitted the copyrighted television programs from his servers in Pakistan to Jadoo TV users. *Id.* at *5. Defendant Sohail moved to dismiss DISH's direct copyright infringement claim against himself, arguing that DISH had not adequately alleged his direct infringement because it was Shah—not Sohail—who actually transmitted the copyrighted programs. *Id.*

The *DISH Network* court disagreed and denied Sohail's motion to dismiss. The complaint plausibly alleged that "Sohail specifically directed Shah to engage in infringing activities," which was sufficient to state a claim for direct copyright infringement against Sohail individually. *Id.* In so ruling, the court emphasized the allegations that "Sohail 'personally made the decision for JadooTV to transmit the Protected Channels,'" and that Shah acted "at Sohail's direction or with his authorization or ratification." *Id.*

For the same reasons, Publishers plausibly allege Dr. Amodei's direct liability here. Dr. Amodei "specifically directed" his employees "to engage in infringing activities," he "personally made the decision" to engage in the illegal torrenting, and his employees acted at his "direction or with his authorization or ratification" in completing that torrenting. *See id.*; SAC ¶¶ 71–74, 85.

The recent *Robinson v. Binello* case further illustrates why Dr. Amodei's motion to dismiss fails. 771 F. Supp. 3d 1114 (N.D. Cal. 2025). In *Robinson*, the defendant gaming platform operator Roblox moved to dismiss the plaintiff's direct copyright infringement claims, arguing the plaintiff had "not alleged facts showing that Roblox directly caused any infringement of [plaintiff's] copyright." *Id.* at 1122. The court denied Roblox's motion to dismiss, highlighting the plaintiff's

allegations demonstrating Roblox's "active role" and "involvement in the infringement," including that Roblox "reviewed and approved [the individual co-defendant's] upload of [plaintiff's] copyrighted work." *Id.* at 1123. Likewise, Dr. Amodei here "approved" co-defendant Mr. Mann's and other Anthropic employees' infringing torrenting, thereby "caus[ing] the copying." *Id.*

Relatedly, the Ninth Circuit has also cautioned that proximate causation "is an intensely factual question that should typically be resolved by a jury." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013). Where Publishers have plausibly alleged Dr. Amodei's active involvement in the illegal torrenting, there is no basis for him to demand dismissal of the direct infringement claim based on volition arguments at this premature stage.

### C. None of the cases cited by Dr. Amodei support dismissal of Publishers' direct infringement claim against him.

The two district court cases Dr. Amodei cites in an attempt to undermine Publishers' direct infringement claim, Mot. 3–4, are clearly distinguishable. Neither warrants dismissal of Publishers' claim against Dr. Amodei.

In *Routt v. Amazon.com, Inc.*, the plaintiff copyright owner sued Amazon in connection with its Amazon Associates Program, through which "operators of independent websites participating in the [program] . . . can advertise Amazon products and earn advertising fees for purchases made by end users who click through to Amazon." 2012 WL 5993516, at *1 (W.D. Wash. Nov. 30, 2012). The relevant question was whether Amazon could be directly "liable when one of these [independent websites] infringes a third party's intellectual property rights." *Id.* The court held that the plaintiff failed to state a plausible claim against Amazon for direct liability (or contributory or vicarious liability), given the lack of specific allegations that Amazon took any affirmative action at all, let alone that it directed the independent websites to add the infringing materials to their websites. *See id.* at *2–4.

In this case, by contrast, Publishers allege in detail how Dr. Amodei, unlike Amazon, participated in and directed the specific infringing torrenting activity. *See, e.g.*, SAC ¶¶ 70-74, 85.

Similarly, in *Willis v. Tennant*, the plaintiff copyright owner of the musical composition "Go West" sued Neil Tennant and Chris Lowe, the members of the band Pet Shop Boys, alleging

direct copyright infringement against them based on a third-party production company's distribution of a concert film including their live performance of that song. 2025 WL 2978714, at *1–2 (S.D. Cal. Oct. 22, 2025). The court held, among other deficiencies, that the plaintiff failed to state a claim for direct infringement. *Id.* at *7. Specifically, the plaintiff failed to allege any non-conclusory acts that Tennant and Lowe took to cause the film to be distributed and publicly performed in violation of the plaintiff's copyrights. *Id.* Such allegations were lacking because Tennant and Lowe had no "ownership or other interest in" the third-party production company behind the film and, at the time of the live performance, Tennant and Lowe had the plaintiff's "approval" to perform the song. *Id.* at *1.

The *Willis* facts are obviously far afield from Publishers' allegations against Dr. Amodei. Publishers make detailed allegations that Dr. Amodei specifically directed and caused the infringing torrenting at issue, SAC ¶¶ 70-74, 85; that "Anthropic has never sought or secured Publishers' permission to use their valuable copyrighted works in this way," *id.* ¶ 92; and that Dr. Amodei controls Anthropic as its founder and CEO, *id.* ¶ 5.

**II. In the alternative, Publishers should be permitted to amend their Complaint.**

If the Court finds Publishers' allegations insufficient, Publishers request leave to amend. As this Court has recognized, "[i]f dismissal is warranted, the court should grant leave to amend 'unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 1487988, at *3 (N.D. Cal. Mar. 26, 2025) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)); *see also Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023) ("[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." (citation omitted)). Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party," courts allow amendment whenever a complaint's deficiencies can conceivably be cured. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citation omitted); *see e.g., Rivas v. Kijakazi*, 2023 WL 8006846, at *2 (N.D. Cal. Nov. 17, 2023).

Here, Dr. Amodei's attempts to cast Publishers as having already had "ample opportunity"

to amend, Mot. 5, are unavailing. *Welgus v. TriNet Grp., Inc.*, the sole case cited by Dr. Amodei to support his extraordinary demand that Publishers be denied the opportunity to amend, bears no resemblance to this case. 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) . In *Welgus*, the court denied the plaintiff leave to amend only after that plaintiff had repeatedly "fail[ed] to correct the identified deficiencies" in his complaint after "two years, four complaints, two rounds of motions to dismiss and two lengthy oral arguments where [p]laintiff had the opportunity to be heard." *Id.* at *32. In light of that record, the court concluded that the plaintiff had "no additional facts to plead." *Id.* Here, the record is drastically different. The present case was filed just earlier this year, this is the first motion to dismiss filed by Dr. Amodei, and the Court has not previously weighed in on the sufficiency of Publishers' allegations against Dr. Amodei. Further, the *Welgus* court placed significant weight on the prejudice to the defendants in deciding to deny the plaintiff further leave to amend. *Id.* at *33. Dr. Amodei articulates no such prejudice in his Motion here.

Finally, Dr. Amodei's suggestion that Publishers have "[a]ccess to a pre-existing fact record" is wrong. Mot. 5. While Publishers have been able to learn some information from unsealed materials from the *Bartz v. Anthropic* litigation, additional details remain sealed and inaccessible to Publishers. Even now, Publishers are learning and confirming facts regarding Dr. Amodei's direct liability. Just two weeks ago, Dr. Amodei's co-defendant in this case, Mr. Mann, answered Publishers' complaint and explicitly admitted that he "discussed the potential acquisition of LibGen data with Dr. Amodei" and—critically—"Dr. Amodei approved the acquisition." Def. Mann Answer ¶ 71 (Aug. 17, 2026), ECF No. 106. Publishers would be unfairly prejudiced by being denied the opportunity to amend to address these and other facts that Publishers will learn as this case progresses.

## CONCLUSION

Publishers respectfully request that the Court deny Dr. Amodei's Motion to Dismiss in full.

Dated: August 31, 2026

Respectfully submitted,

_/s/ Nicholas C. Hailey_
**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Corey Miller
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
corey@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800
ef-jgk@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*