GRACE YANG (CA Bar No. 286635)
MIRANDA KANE (CA Bar No. 150630)
HAYK ESAGHOULYAN (CA Bar No. 349050)
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 343-7100
Fax: (415) 343-7101
Email: gyang@conmetkane.com
Email: mkane@conmetkane.com
Email: hesaghoulyan@conmetkane.com

*Attorneys for Defendant Dr. Dario Amodei*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC, PBC, ET AL.,<br><br>Defendants. | Case No. 5:26-cv-00880-EKL-SVK<br><br>**DEFENDANT DR. DARIO AMODEI'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS**<br><br>Judge: Hon. Eumi K. Lee<br>Date: November 4, 2026<br>Time: 10:00 AM<br>Courtroom: 7 – 4th Floor |

## I. INTRODUCTION

Defendant Dr. Dario Amodei's partial motion to dismiss asks this Court to decide only a narrow question: whether Plaintiffs have alleged all the required elements for their direct infringement claim under Count I, where their latest complaint has no allegations that Dr. Amodei himself copied anything.

Plaintiffs' opposition confirms that this claim should be dismissed. Plaintiffs now argue that Dr. Amodei is liable for "***Anthropic's*** direct infringement"—so by their own words, Plaintiffs seek to hold Dr. Amodei liable for infringement committed ***by others***. *See* Opp. at 5. But liability for someone else's infringement is secondary liability, whereas direct infringement requires copying "*by* the defendant" himself. *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014) (emphasis in original and citation omitted). Because Plaintiffs do not plausibly allege the "copying" requirement for their direct infringement claim, the Court should dismiss that claim as to Dr. Amodei and leave Plaintiffs' allegations that Dr. Amodei directed others as the subject of their contributory infringement claim, which this motion does not challenge.[1]

## II. ARGUMENT

### A. The Second Amended Complaint Fails to Allege Any "Copying" by Dr. Amodei.

To claim direct copyright infringement, Plaintiffs must: (1) "show ownership of the allegedly infringed material"; and (2) "demonstrate that the alleged infringer[] violated at least one exclusive right granted to copyright holders," *i.e.*, the defendant himself copied. Then "in addition" to those requirements, the plaintiff must (3) "show causation[,] also referred to as 'volitional conduct'" by the defendant. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). Specifically, the plaintiff must show "copying *by* the defendant" himself. *Fox Broad. Co., Inc.*, 747 F.3d at 1067–68 (emphasis in original and citation omitted).

Plaintiffs' opposition does not identify any allegations that ***Dr. Amodei himself copied*** any content, because no such particularized allegation exists in their complaint. For instance, while Plaintiffs' opposition contends that "Dr. Amodei torrented pirated content" (*see* Opp. at 1), their SAC only names

[1] In their opposition, Plaintiffs cite online sources about Anthropic's purported valuation. *See* Opp. at 2, n. 1. These sources appear nowhere in the Second Amended Complaint ("SAC"), and are in any event irrelevant to Dr. Amodei's motion and must be disregarded at the Rule 12(b)(6) stage.

co-defendant Benjamin Mann and two unnamed "Anthropic employees" as the direct infringers who reportedly "torrented." *See* SAC ¶¶ 70–71, 73–74. Plaintiffs then continue to identify only Mr. Mann and the two unnamed Anthropic employees as the source of the "direct infringement" underlying Plaintiffs' contributory infringement claim. *See id.* ¶ 156.

Yet because Plaintiffs have failed to plead any specific allegations of "copying *by*" Dr. Amodei, they cannot maintain a direct infringement claim against him. *Fox Broad. Co., Inc.*, 747 F.3d at 1067–68 (emphasis in original and citation omitted). The Ninth Circuit recognizes that the alleged copying is what renders direct infringement "distinct" from a form of secondary liability like contributory infringement: the former "requires proof of unlawful copying," whereas the latter "requires proof that a defendant . . . has knowledge of a third party's infringing activity, and induces, causes, or materially contributes to the infringing conduct." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009) (internal quotations omitted). Other courts agree that liability for direct infringement does not extend beyond "the party who *actually engages* in infringing conduct—the one who directly violates the prohibitions," and by contrast, a defendant with "knowledge coupled with inducement or supervision coupled with a financial interest" could instead be indirectly liable for contributory infringement. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549–50 (4th Cir. 2004) (emphasis in original).

For that reason, courts have dismissed direct infringement claims in other cases—even against individual founders who allegedly "encourage[d] the massive infringement" or created a business plan to induce infringement—because the alleged copying was done by someone beside the defendant. *Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1308–09 (S.D. Fla. 2011); *see, e.g.*, *Routt v. Amazon.com, Inc.*, No. C12-1307JLR, 2012 WL 5993516, at *4 (W.D. Wash. Nov. 30, 2012) (dismissing direct infringement claim because the alleged copying was done by others, and not Amazon); *Willis v. Tennant*, No. 25-CV-491 TWR (DEB), 2025 WL 2978714, at *4 (S.D. Cal. Oct. 22, 2025) (dismissing direct infringement claim against certain defendants, even where they had allegedly "engag[ed] in acts causing the infringing work to be reproduced, distributed, displayed, and publicly performed" elsewhere, because other entities had reportedly distributed and displayed the work in question). The Court should do the same and dismiss the direct infringement claim against Dr. Amodei.

### B. Plaintiffs Do Not Allege "Copying" by Alleging "Control."

Unable to allege that Dr. Amodei "copied" anything himself, Plaintiffs argue that Dr. Amodei effectively "made" copies by "caus[ing]" and otherwise controlling the alleged torrenting through his purported "discuss[ion]," directing," and "approving." *See* Opp. at 8–10 (citing SAC ¶¶ 71 –74, 85). Plaintiffs' argument fails for two reasons.

***First,*** none of Plaintiffs' cited cases aid their position. The district court in Plaintiffs' primary case—*DISH Network L.L.C. v. Jadoo TV, Inc.*, 20-cv-01891-CRB, 2020 WL 5816579 (N.D. Cal. Sept. 30, 2020)—rejected, rather than supported, Plaintiffs' argument, by acknowledging that even allegations about an individual defendant's "control over the corporation" and his "personally ma[king of] the decision" to transmit protected channels "***do not warrant personal liability***" for that defendant. *Id.* at *4 (emphasis added). Additionally, the detailed allegations in *DISH Network L.L.C.* demonstrate how Plaintiffs' conclusory allegations fall short. In *DISH Network L.L.C.*, the plaintiff alleged that the individual defendant had "personally made the decision" to transmit the specific infringing content; that he was the company's "chief technologist" who had personally designed the service that transmitted such content; and that he himself had "discovered a workaround" that permitted that content to continue on the air. *Id.* at *5. These were the kinds of specific factual allegations that "ma[d]e it plausible to infer" that the individual defendant was involved in the infringing activities. *Id.* But no such specifics are alleged in this case, where Plaintiffs merely conclude without particular facts that Dr. Amodei somehow "directly infringed" (and where notably, the complaint identifies only Mr. Mann and the two other Anthropic employees as the individuals who allegedly torrented anything). *See, e.g.*, SAC ¶¶ 156, 157. Plaintiffs also gloss over key facts in their other cited case, *Robinson v. Binello*, 771 F. Supp. 3d 1114, 1123 (N.D. Cal. 2025), where an individual defendant had supposedly "created a copy" of the infringing content and "stored the copy on [his own] server," which was enough for a direct infringement claim against him.

***Second***, to the extent that Plaintiffs seek to substitute allegations of "copying" with allegations of "control" over the process, appellate courts have already rejected such efforts. In *Fox Broadcasting Company, Inc.*, the Ninth Circuit affirmed the denial of a motion for preliminary injunction based in part on claims of direct copyright infringement. 747 F.3d at 1073. In that case, the plaintiff had alleged that the defendant exerted various forms of control over the copying of television shows, including "decid[ing]

how long copies are available for viewing, modif[ying] the start and end times of the primetime block, and prevent[ing] a user from stopping a recording." *Id.* at 1067. But even on those alleged facts, the Ninth Circuit agreed that the plaintiff had not established a likelihood of success on its direct infringement claim—because such allegations "do not establish that [the defendant] made the copies." *Id.* at 1068.

Similarly in *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, the Second Circuit reversed a summary judgment for the plaintiffs on their direct infringement claim because someone other than the defendant had "actually 'ma[de]'" the infringing copies. 536 F.3d 121, 133 (2d Cir. 2008). This was true even though the defendant had "unfettered discretion in selecting the programming that it would make available for recording," had a "continuing relationship" with the customers, and had "control over recordable content" and the "instrumental[ity] of copying." *Id.* at 131–32. The Second Circuit explained that such facts were "more relevant to the question of contributory liability" and "do[] not warrant the imposition of direct liability." *Id.* at 132–33. The same is true here too, where Plaintiffs allege even less and conclude without specific facts that Dr. Amodei "discussed," "directed," and "approved" the alleged torrenting. *See* SAC ¶¶ 71–74, 85. Absent any allegations of actual "copying" by Dr. Amodei himself, Plaintiffs' direct infringement claim necessarily fails.

### C. *DISH Network* Does Not Eliminate Plaintiff's Requirement to Allege "Copying."

Plaintiffs next suggest that even if they cannot satisfy each element required for their direct infringement claim, Dr. Amodei can still be held "personally liable" for torts he allegedly "authorizes or directs" as a corporate officer. *See* Opp. at 5–8 (citing *DISH Network L.L.C.*, 2020 WL 5816579).

*DISH Network* is not on point. To be clear, the district court in *DISH Network L.L.C.*, 2020 WL 5816579, at *4, applied *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996), which merely removed a potential defense for corporate officers who could be held personally liable for torts that they authorized or directed, "notwithstanding that [they had] acted as an agent of the corporation and not on [their] own behalf." But neither *Yost* nor *DISH Network L.L.C.* held that an officer's status, combined with allegations that he authorized or directed others, can eliminate the legal requirement that the defendant himself "copied" in order for a direct infringement claim to stand. Nor could they. In fact, the Ninth Circuit and other courts have confirmed the opposite and maintain that such copying must be done by the defendant himself. *See, e.g.*, *Fox Broad. Co.*, 747 F.3d at 1067 (the plaintiff must show

copying "by the defendant"); *Dream Games of Ariz., Inc.*, 561 F.3d at 995 (same); *see also CoStar Grp., Inc.*, 373 F.3d at 549 (same). This Court should not permit Plaintiffs to use *DISH Network*, *Yost*, or their other cited caselaw to circumvent the "copying" requirement for their direct infringement claim. *See* Opp. at 5–8.

Moreover, the Court should reject Plaintiffs' attempts to disguise what is essentially a secondary-liability claim as a "direct infringement claim"—even though the claim does not allege the elements required for direct infringement. Indeed, Plaintiffs' opposition makes clear that they seek to hold Dr. Amodei liable for "***Anthropic's*** direct infringement," because he allegedly "authorized and directed" the infringing conduct. Opp. at 5–6 (emphasis added). This is alleged liability ***for another party's reportedly infringing acts***, which is, at most, a theory of secondary infringement, not direct infringement. *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 593 (2026) ("The Copyright Act does not expressly render anyone liable for infringement committed by another.") (citation omitted).

If anything, accepting Plaintiffs' argument would effectively eliminate the clear distinction that courts draw between direct infringement and contributory infringement. *See, e.g.*, *Cartoon Network LP, LLLP*, 536 F.3d at 133 ("The Supreme Court's desire to maintain a meaningful distinction between direct and contributory copyright infringement is consistent with congressional intent."); *see also Dream Games of Ariz., Inc.*, 561 F.3d at 995 ("The theory of secondary liability is distinct from the theory of direct infringement. While direct infringement requires proof of unlawful copying, contributory infringement requires proof that a defendant . . . has knowledge of a third party's infringing activity, and . . . induces, causes, or materially contributes to the infringing conduct."). Tellingly, all of Plaintiffs' allegations about Dr. Amodei are allegations that go to the issue of contributory infringement, and not direct infringement. *Compare, e.g.*, SAC ¶ 71 (knowledge), ¶¶ 73–74 (direction and approval), ¶ 157 (same allegations for contributory infringement claim against Dr. Amodei) *with CoStar Grp., Inc.*, 373 F.3d at 549 ("knowledge coupled with inducement or supervision coupled with a financial interest" went to the issue of contributory liability rather than direct liability); *Dream Games of Ariz., Inc.*, 561 F.3d at 995 (knowledge with inducement, causation, or material contribution goes to contributory liability). The Court should therefore dismiss Plaintiffs' direct infringement claim here.

**D. The Direct Infringement Claim Should Be Dismissed With Prejudice.**

The Court should dismiss the direct infringement claim against Dr. Amodei—without leave to amend. There is no dispute that Plaintiffs have already filed three complaints, and that they now seek a fourth opportunity to amend yet again if the Court grants Dr. Amodei's limited motion to dismiss his direct infringement claim. There is also no dispute that Plaintiffs' multiple rounds of amendments come after undersigned counsel repeatedly notified Plaintiffs' counsel that the direct infringement claim fatally lacks any allegations of copying by Dr. Amodei himself. And notably, Plaintiffs' opposition does not even attempt to identify any new factual allegations that they would assert to try to and fill this gap. Instead, they cite to additional allegations that would at best support a contributory infringement claim against Dr. Amodei, and in any event do not plausibly allege that Dr. Amodei performed any copying ***himself***. *See* Opp. at 13.

## III. CONCLUSION

For the reasons above, Dr. Amodei respectfully requests that the Court grant Dr. Amodei's partial motion to dismiss his direct infringement claim.

Dated: September 14, 2026

Respectfully submitted,

**CONRAD | METLITZKY | KANE LLP**

*/s/ Grace Yang*
GRACE YANG
MIRANDA KANE
HAYK ESAGHOULYAN

*Attorneys for Defendant*
DR. DARIO AMODEI