SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ALEX W. MILLER (Pro Hac Vice)
alex.miller@wilmerhale.com
JARED V. GRUBOW (Pro Hac Vice)
jared.grubow@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

LOUIS W. TOMPROS (Pro Hac Vice)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (Pro Hac Vice)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant*
**ANTHROPIC PBC**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC, ET AL.,<br><br>Defendants. | Case No. 5:26-cv-00880-EKL-SVK<br><br>**ANTHROPIC PBC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL**<br><br>Hearing Date: November 4, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Eumi K. Lee |

## TABLE OF CONTENTS


INTRODUCTION ....................1

ARGUMENT ....................2

I. Publishers Have Not Plausibly Alleged Direct Infringement In Outputs ....................2

A. Publishers Have Not Alleged Any Outputs Substantially Similar To The Works In Suit ....................3

B. Publishers' Excuses For Not Pleading Substantial Similarity Are Baseless ....................6

C. Publishers' Allegations Are Equally Consistent With Noninfringement ....................8

II. The Court Should Dismiss Publishers' DMCA Claim ....................10

A. Publishers Do Not Plead Removal Of CMI From Any Copyrighted Work ....................10

1. The DMCA Only Prohibits Removal Of CMI From A Complete Work ....................11

2. Publishers' Arguments In Opposition About An Unpled Theory Cannot Save Their DMCA Claim ....................13

B. Publishers Do Not Plead Distribution Of Their Works With CMI Removed ....................13

III. The Court Should Dismiss Count II (As To Outputs) And Count V (In Full) *With Prejudice* ....................14

CONCLUSION ....................15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035 (S.D. Cal. 2023) .......... 11

*Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956 (N.D. Cal. 2024) .......... *passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 2, 5, 10, 14

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) .......... 7, 10

*Biltform Architecture Grp. Inc. v. BMA Architecture LLC*, 2026 WL 2056026 (D. Ariz. July 16, 2026) .......... 11

*Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221 (N.D. Cal. 2015) .......... 7, 8

*Clifton v. Pearson Educ., Inc.*, 2012 WL 1565236 (N.D. Cal. May 2, 2012) .......... 7

*Doe 1 v. GitHub, Inc.*, 2024 WL 1643691 (N.D. Cal. Apr. 15, 2024) .......... 2, 10, 11

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) .......... 11, 12

*Energy Intel. Grp., Inc. v. Bank of Am., N.A.*, 2018 WL 3303166 (S.D. Tex. July 5, 2018) .......... 7

*Epidemic Sound, AB v. Meta Platforms, Inc.*, 2026 WL 2021347 (N.D. Cal. July 13, 2026) .......... 4

*Falkner v. General Motors LLC*, 393 F. Supp. 3d 927 (C.D. Cal. 2018) .......... 11, 12

*Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162 (N.D. Cal. 2019) .......... 14

*Hong v. RugsUSA, LLC*, 810 F. Supp. 3d 1050 (N.D. Cal. 2025) .......... 8

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) .......... 12

*In re Century Aluminum Co. Securities Litig.*,
729 F.3d 1104 (9th Cir. 2013) ....................3, 8, 9

*In re Google Generative AI Copyright Litig.*,
809 F. Supp. 3d 903 (N.D. Cal. 2025) ....................3

*Justice v. Suno, Inc.*,
2026 WL 2445362 (D. Mass. Aug. 20, 2026) ....................5, 6, 8

*Justice v. Uncharted Labs, Inc.*,
2026 WL 1430232 (S.D.N.Y. May 21, 2026) ....................4, 5, 7

*Kadrey v. Meta Platforms, Inc.*,
2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ....................3

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999) ....................11

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
2020 WL 5991503 (C.D. Cal. Aug. 14, 2020)....................11

*Kling v. World Health Org.*,
532 F. Supp. 3d 141 (S.D.N.Y. 2021)....................14

*N. Coast Indus. v. Jason Maxwell, Inc.*,
972 F.2d 1031 (9th Cir. 1992) ....................3

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004) ....................9, 10

*O'Neal v. Sideshow, Inc.*,
583 F. Supp. 3d 1282 (C.D. Cal. 2022) ....................11

*Real World Media v. Daily Caller, Inc.*,
744 F. Supp. 3d 24 (D.D.C. 2024)....................12, 13

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ....................14

*Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*,
2022 WL 20286688 (N.D. Cal. Feb. 24, 2022) ....................14

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) (en banc) ....................2, 3, 4, 6

*Strike 3 Holdings, LLC v. Meta Platforms, Inc.*,
835 F. Supp. 3d 1026 (N.D. Cal. 2026)....................9

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ....................14

## STATUTES, RULES, AND REGULATIONS

17 U.S.C. § 107 ....................13

17 U.S.C. § 1202(b) ....................11

17 U.S.C. § 1202(c) ....................11

## OTHER AUTHORITIES

*Andersen v. Stability AI Ltd.*,
No. 23-cv-201 (N.D. Cal. Nov. 29, 2023), Dkt. 129 ....................6

*Concord Music Group, Inc. et al. v. Anthropic PBC*,
No. 5:24-cv-03811-EKL-SVK (N.D. Cal.).................... *passim*

## INTRODUCTION

The Court should dismiss with prejudice Publishers' claims for direct infringement in outputs and violation of the DMCA.

Publishers' opposition concedes, and then doubles down on, the very thing that makes their outputs claim conclusory: failure to identify a single purportedly infringing output. Opp. 10-17. Indeed, they acknowledge that their complaint ***intentionally*** omits the kind of specific allegations they included (pre-discovery) in *Concord I*, where Publishers identified specific instances of purportedly infringing outputs generated by their investigators. *Id.* at 16; Mot. 1-2. Here, by contrast, they admit their complaint does not identify any such examples. Opp. 10. Instead, they disclaim outright the need to plausibly allege Claude outputs that are substantially similar to the Works in Suit. *Id.* at 11.

To get there, Publishers invent new pleading rules for suits against AI developers. They argue that a plaintiff need only allege that a company once copied a work during LLM training to make infringing outputs plausible. Opp. 5-7. But training and outputs are distinct uses that must be evaluated separately. Broad assertions about what LLMs can do or what users might ask them also do not make infringing outputs plausible. That is especially true given Publishers' acknowledgment that Anthropic has implemented guardrails to help prevent potentially infringing outputs. Second Am. Compl. ("SAC") ¶¶ 115-118 (May 21, 2026), Dkt. 93.

Publishers also argue that pleading requirements must be relaxed when the supposed factual basis for a complaint comes from an attorney-directed investigation. Opp. 13-17. They offer no support for such a rule, and for good reason. It is fundamentally incompatible with every authority governing pleading and would promote litigation by surprise. Nor does their claim to need discovery hold up. Publishers have Claude outputs generated in the course of their pre-suit investigation. Indeed, before any discovery in *Concord I*, the same lawyers and plaintiffs used Anthropic's publicly available models to generate specific outputs cited in their complaint—the very kind of information Publishers now say is exclusively in Anthropic's possession.

Publishers' DMCA claim also fails. The DMCA prohibits removing CMI from a copyrighted work ***as a whole***. Mot. 10-11. But Publishers do not allege CMI was removed from their whole

works. That alone dooms their claim. *Id.* Publishers' assertion (at 20) that Anthropic "fails to cite any authority" to support that requirement is false. Courts in this district have required that copies without CMI be "identical" to a "plaintiff's work in its entirety." *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 971 (N.D. Cal. 2024) (citing *Doe 1 v. GitHub, Inc.*, 2024 WL 1643691, at *2 (N.D. Cal. Apr. 15, 2024)). This makes sense. Publishers' alternative rule would require appending CMI every time someone shared a clip of a movie or quote from a magazine article online. As a fallback, Publishers' opposition argues that CMI was removed from their entire works—here, musical compositions—when Anthropic allegedly torrented or scanned songbooks that contained both music and lyrics. Opp. 21. But Publishers did not plead that DMCA theory. Instead, the complaint alleges only that Anthropic removed CMI from the text of ***webpages*** that contained lyrics—not full musical compositions—using tools the complaint does not and cannot allege were ever applied to books. SAC ¶¶ 102-107.

There is no real dispute about what Publishers did or did not plead. They identified no substantially similar outputs and no removal of CMI from a complete work. Unable to defend those omissions, Publishers ask the Court to carve out pleading exceptions for suits against AI developers and allow them discovery to search for facts to support the missing allegations. But the rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Because Publishers were on notice of these defects months before their last amendment, the dismissal should be with prejudice.[1]

## ARGUMENT

### I. PUBLISHERS HAVE NOT PLAUSIBLY ALLEGED DIRECT INFRINGEMENT IN OUTPUTS

Publishers do not allege that any Claude output was "substantially similar to [their] copyrighted works." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). But binding precedent requires allegations of substantial similarity to state a claim for infringement. *Id.* And allegations about LLM training or prompts (at 5-6) do not

[1] Unless noted emphasis is added and internal quotation marks are omitted. "Mot." refers to Anthropic's Motion for Partial Dismissal, filed at Dkt. 103. "Opp." refers to Plaintiffs' Opposition to Motion for Partial Dismissal, filed at Dkt. 115. "*Concord I*" refers to *Concord Music Group, Inc. et al. v. Anthropic PBC*, No. 5:24-cv-03811-EKL-SVK (N.D. Cal.).

make infringement in unidentified outputs plausible, particularly given Anthropic's guardrails. Publishers' allegations are equally consistent with noninfringement. *In re Century Aluminum Co. Securities Litig.*, 729 F.3d 1104 (9th Cir. 2013). The Court should dismiss Publishers' infringement in outputs claim.

### A. Publishers Have Not Alleged Any Outputs Substantially Similar To The Works In Suit

Although "evidence is not required at the motion to dismiss stage," Opp. 4, each alleged method of infringement must be supported by plausible factual allegations. *See, e.g.*, *In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 913 (N.D. Cal. 2025). Publishers claim infringement in outputs. But they do not identify which outputs infringed, which lyrics those outputs reproduced, or how much of those lyrics Anthropic allegedly copied. Without these specific allegations, Publishers' claim fails because a "plaintiff must establish infringement by showing ***both access*** to its copyrighted material on the part of the alleged infringer ***and substantial similarity*** between the copyrighted work and the alleged infringing work." *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992); *Skidmore*, 952 F.3d at 1064 (same).

Publishers do not even attempt to make this showing. Instead, they argue that allegations that Anthropic used copies of their lyrics in training are alone sufficient to plausibly allege that Claude generated substantially similar outputs. Opp. 5-6, 11-13. But those allegations plead, at best, ***access*** to copyrighted works—they say nothing about whether Anthropic's models ever produced any ***substantially similar outputs***. Thus, as *Kadrey* held, "plaintiffs are wrong to say that, because their [works] were duplicated in full as part of the [LLM] training process, they do not need to allege any similarity between [LLM] outputs and their [works] to maintain a claim." *Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023).

Publishers also argue (at 7, 12) that they have plausibly alleged infringing ***outputs*** by referring to user ***prompts*** that asked Claude for lyrics. For example, Publishers cite SAC ¶ 114, which describes categories of prompts from a 2024 report—a time period that does not even overlap with Publishers' claims. Opp. 7; SAC ¶¶ 11, 90 (restricting claims to post-September 2025 models). In any event, that paragraph contains only categories of prompts and does not identify any specific

outputs at all. Allegations about categories of prompts, or even individual prompts, say nothing about the content of any corresponding outputs. It would be unreasonable here to infer that Claude's outputs included lyrics to the Works in Suit based on these generic clusters of prompts alone, especially given the time period mismatch and Publishers' acknowledgment that Anthropic has implemented guardrails to prevent reproduction of lyrics in outputs. SAC ¶ 115. The other paragraphs cited say even less about any actual outputs. *Id.* ¶¶ 111-121.

Publishers' argument that Anthropic has only added a "limited" set of lyrics to its guardrails does not change the analysis. Opp. 7; SAC ¶ 118. Publishers never actually allege that Anthropic's guardrails omit lyrics to the Works in Suit. And they ignore that Anthropic's guardrails protect against regurgitation independent of any particular lyrics—i.e., that the guardrails are designed to prevent the reproduction of lyrics more generally. *See, e.g.*, SAC ¶¶ 115-118. Unable to plead actual reproduction, Publishers resort to vague allegations that the guardrails do not prevent outputs "implicating" (not copying) "Publishers' lyrics" (not the Works in Suit). SAC ¶ 118. Whatever that means, it does not state a claim for infringement of any Work in Suit in this case by any output.

Nor are Publishers' allegations about "direct copying" sufficient. Opp. 10. In *Skidmore*, the Ninth Circuit held that "[t]he second prong of the infringement analysis contains two separate components: copying and unlawful appropriation." 952 F.3d at 1064. Adequately pleading unlawful appropriation requires "compar[ing] the objective similarities of specific expressive elements in the two works." *Id.* So even when a plaintiff alleges direct copying, they must also plausibly allege substantial similarity. *Id.*; *see also Epidemic Sound, AB v. Meta Platforms, Inc.*, 2026 WL 2021347, at *29 (N.D. Cal. July 13, 2026). Publishers' complaint fails to allege either side of the required substantial-similarity comparison—it identifies no lyrics and no outputs.

*Justice v. Uncharted Labs, Inc.* stands for the same rule. There, the plaintiffs alleged that the defendant "trained its AI model" Udio "on their copyrighted sound recordings." 2026 WL 1430232, at *2 (S.D.N.Y. May 21, 2026). They alleged that Udio is "capable of, and does, regurgitate protected material from its training data that is not transformative." *Id.* And they asserted "upon information and belief, that their own works have been reproduced in this way, the outputs are substantially similar, if not identical to their own." *Id.* The court held that these allegations "lack[ed]

sufficient specificity to proceed as pleaded" because the plaintiffs could "identify no specific Udio output substantially similar to any work they own." *Id.* The same is true here. If anything, Publishers' allegations are more deficient; their complaint does not even reference the concept of "substantial similarity"—even in a conclusory way.

Publishers must instead ask for an exception to Ninth Circuit precedent. According to Publishers, only "a plausible inference" of substantial similarity is required, and thus there is no need to allege specific outputs. Opp. 11. That exception would fundamentally misapply the law: inferences are only "plausible" when they are supported by "factual content." *Iqbal*, 556 U.S. at 678. There can be no plausible inference of substantial similarity between a work and an output if there are no factual allegations about the output. Publishers cite two district court decisions (one from Massachusetts) to support their misinterpretation. *Id.* at 11-12 (citing *Justice v. Suno, Inc.*, 2026 WL 2445362, at *2-3 (D. Mass. Aug. 20, 2026) and *Andersen*, 744 F. Supp. 3d at 974-75). Neither case can overrule the Ninth Circuit's substantial similarity requirement.

And even if these alternative district court analyses were controlling, they would not save Publishers' claims. *Suno* found that the plaintiffs stated a claim because the complaint "provide[d] 100 specific examples of Suno outputs that closely imitate[] or replicate[] specific" works and "allege[d] comments by Suno's CEO that Suno's model already has the ability to produce outputs that replicate real artists' vocals and songs." 2026 WL 2445362, at *3. *Andersen* relied on 28 paragraphs of allegations containing "comments from Stability's CEO" about the model's "ability to reproduce works" and detailed descriptions of "academic papers indicating that the [defendant's models] are capable of producing very similar if not identical works to at least some training images." 744 F. Supp. 3d at 974.

Publishers offer no comparable allegations here. They do not have "100 specific examples" of Claude outputs that "closely imitate" the Works in Suit. *Suno*, 2026 WL 2445362, at *3. They have zero. And allegations that Anthropic's founders had a "concern" about a different LLM made by a different company before Anthropic existed, SAC ¶ 109, are not comparable to a CEO publicly touting his own model's ability to regurgitate full works, *Suno*, 2026 WL 2445362, at *3. Nor are communications between Anthropic employees discussing an earlier model's theoretical ability to

memorize training data. *Id.* Passing references to unidentified "scientific literature" with no apparent connection to the Works in Suit cannot save their claims. SAC ¶ 119. Publishers' complaint offers nothing like the *Andersen* complaint's 21 paragraphs of academic findings about substantially similar or identical reproductions. 744 F. Supp. 3d at 974; *see* First Am. Compl. ¶¶ 130-150, *Andersen v. Stability AI Ltd.*, No. 23-cv-201 (N.D. Cal. Nov. 29, 2023), Dkt. 129. Indeed, Publishers' complaint never even mentions "substantial similarity" at all.

**B. Publishers' Excuses For Not Pleading Substantial Similarity Are Baseless**

Publishers' failure to plausibly allege substantial similarity stands in stark contrast to their allegations in *Concord I*. Mot. 1-2, 9. There, Publishers provided specific examples of infringing outputs generated by their investigators and agents. *Concord I* Compl. ¶¶ 66-69, 73-74, 76, 78, 87 (Oct. 18, 2023), Dkt. 1. As to those specific examples, the *Concord I* complaint alleged that Claude's outputs were "identical or substantially and strikingly similar" to the lyrics at issue. *Concord I* Compl. ¶ 70; *see id.* ¶ 65. Here, Publishers allege neither. There is ***not a single allegation***, not even a conclusory one, that any Claude outputs are identical or substantially similar to any of the Works in Suit. If Publishers had a Rule 11 basis for such an allegation they would have made it. Each of Publishers' arguments for excusing that failure is factually or legally wrong.

*First*, Publishers assert that using the words "verbatim" and "near-verbatim" to describe unidentified outputs in general terms was enough. Opp. 8. But vague references to "verbatim outputs" say nothing about which particular work or how much of it was allegedly copied. It could be a reproduction of five words or 500. "Near verbatim" offers even less specificity. And neither comes close to alleging the requisite degree of similarity between an allegedly infringing output and the protected elements of a Work in Suit. Substantial similarity requires that direct comparison so the court can assess the "objective similarities of specific expressive elements in the two works." *Skidmore*, 952 F.3d at 1064; *see supra* pp. 4-5. This failure in specificity could be easily rectified if Publishers simply identified what outputs they allege are infringing. But they have repeatedly refused to do that in favor of carefully chosen words that offer conclusions while obscuring their supposed factual basis. That is not sufficient to state a claim; plaintiffs "must submit at least a representative sampling of infringed content," demonstrating "what parts" or "portions" of the

works "were copied" and "in what [materials] such copying is manifest." *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020).

*Second*, Publishers argue that they "cannot identify" infringing outputs "at the pleading stage because Anthropic exclusively possesses those records." Opp. 13. They assert that in *Concord I* they "were able to specifically cite and quote" outputs only in an amended complaint filed after discovery began. Opp. 15 n.2. Not true. Publishers filed their initial complaint in *Concord I* before any discovery. It specifically cited and quoted allegedly infringing outputs that Publishers and their agents generated using Claude. Mot. 1-2; *see also, e.g.*, *Concord I* Compl. ¶ 66 (side-by-side comparison of lyrics to "Roar" and Claude output). Claude is no less available to Publishers now than it was then. As they admit, each accused version of Claude has been "released . . . to the general public." SAC ¶ 113; *see also* ¶¶ 11, 112, 148. Publishers "are capable of demonstrating infringing outputs, . . . if they exist." *Uncharted Labs*, 2026 WL 1430232, at *2. That fact also makes this case completely different from Publishers' cited cases (Opp. 14), where all information about the acts of infringement was in fact "peculiarly within the possession and control of the defendant." *Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221, 1222, 1225 (N.D. Cal. 2015) (alleging defendant "alone" knew of ways it exceeded a limited license); *Clifton v. Pearson Educ., Inc.*, 2012 WL 1565236, at *5 (N.D. Cal. May 2, 2012) ("the ***only*** source of additional information" about how defendant exceeded limited license "appear[ed] to be in [d]efendant's possession and control"); *Energy Intel. Grp., Inc. v. Bank of Am., N.A.*, 2018 WL 3303166, at *7 (S.D. Tex. July 5, 2018) (evidence that defendant exceeded limited license was on the defendant's "inaccessible" "servers and computers").

*Third*, Publishers seek a special rule that relaxes pleading requirements when the facts behind a complaint come from an attorney-directed investigation. Opp. 15. That argument would swallow *Twombly* and *Iqbal*. Every complaint follows an attorney-directed investigation that will generate protected work product. Rule 11 requires it. But on a motion to dismiss, a complaint must be evaluated on its own terms; information Publishers chose ***not*** to include in the complaint is irrelevant, work product or not. The only two cases they cite do not address the work product doctrine at all. As explained, *Houghton Mifflin* (at 15) addressed the adequacy of a pleading where

additional facts were exclusively available to the defendant. 152 F. Supp. 3d at 1224-25. *Suno* likewise does not address work product or attorney-directed investigations. Rather, the footnote Publishers quote says only that a plaintiff's failure to identify ongoing infringement "is a separate issue" from whether the defendant infringed in the past. Opp. 16 (citing *Suno*, 2026 WL 2445362, at *3 n.1).

Magistrate Judge van Keulen's *Concord I* discovery order is even less relevant. Publishers quote her ruling, in response to a motion to compel, that "the prompts and related settings used by Publishers in their investigations are attorney work-product." Opp. 15-16 (quoting *Concord I*, Discovery Order at 3 (Dec. 18, 2025), Dkt. 545). The decision did not address pleading standards. And Publishers' quotation says nothing about the status of outputs.

*Finally*, Publishers suggest that the results of discovery in *Concord I* make their allegations here plausible. Opp. 14-15. But a motion to dismiss tests the allegations in a complaint, not the factual record in another case. *Hong v. RugsUSA, LLC*, 810 F. Supp. 3d 1050, 1058 (N.D. Cal. 2025). In any event, Publishers are wrong about the *Concord I* record. Opp. 14-15. Each of their citations shows Anthropic telling the Court that user requests for lyrics are rare. *Concord I*, Dkt. 285 at 3; *Concord I*, Nov. 25, 2024 Hr'g Tr. 49:21-50:2; *Concord I*, Dkt. 67 at 4. Nothing Publishers identify contradicts that undisputed fact. Tellingly, Publishers quote only their own brief to claim there were "hundreds of instances" of infringing prompts and outputs. Opp. 15 (quoting *Concord I*, Dkt. 756 at 6). Even if that were true, it would be a tiny fraction of the more than five million user prompts and outputs produced in *Concord I*. Dkt. 545 at 2.

### C. Publishers' Allegations Are Equally Consistent With Noninfringement

*Century Aluminum* holds that when allegations are equally consistent with infringement and noninfringement they cannot state a claim. Mot. 8. Publishers quote the court's statement that "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." Opp. 8 (quoting *Century Aluminum*, 729 F.3d at 1108). But the court explained two sentences later that "***[t]o render their explanation plausible***, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation."

*Century Aluminum*, 729 F.3d at 1108. That "more" requires pleading "facts tending to exclude the possibility that the alternative explanation is true." *Id.* Publishers never even mention what *Century Aluminum* requires for plausibility, let alone grapple with it.

Publishers' own authority shows why *Century Aluminum* warrants dismissal. Opp. 9. Publishers cite *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, 835 F. Supp. 3d 1026 (N.D. Cal. 2026), as an example of allegations sufficient to defeat an "equally consistent" argument. The plaintiffs there claimed that the defendant infringed by downloading films via BitTorrent. *Id.* at 1032. The defendant argued that others on its internet connection, like employees or guests, could have done the downloading. *Id.* at 1036-37. To show that downloading by others was not equally consistent with the alleged infringement, the plaintiffs offered detailed factual allegations. *Id.* at 1037-39. For example, plaintiffs alleged individual IP addresses and specific facts about the nature of those addresses' downloads that suggested a coordinated effort. *Id.* The allegations included that the IP addresses in question torrented files with similar names, on the same dates, in a manner that suggested each was downloaded based on specific search terms. *Id.* The court found the allegations were so specific that "[i]t strain[ed] credulity to suggest that the[] correlations [we]re mere coincidence." *Id.* at 1038. The plaintiffs had thus gone beyond "bare allegation[s]" to "create[] a reasonable inference that Defendant, not its employees or visitors, controlled the identified IP addresses and used an algorithm to torrent files for a business purpose." *Id.* at 1039. The complaints in *Suno* and *Andersen* offered similarly specific allegations, including allegations of substantially similar outputs of other works and statements by the defendants' CEOs touting the full recreation of works in outputs. *See supra* pp. 5-6.

Publishers' complaint does not even clear the *Strike 3* bar they set for themselves. As explained, not all reproductions of a copyrighted work constitute infringement. Mot. 8. Publishers must therefore plead facts that tend to exclude the possibility of noninfringement. *Id.* But Publishers' complaint does not include any, let alone sufficient, allegations that would preclude the possibility that Claude's outputs did not contain anything substantially similar to any asserted Work in Suit. Without "something more," Publishers' output allegations are consistent with outputs containing only "meager and fragmentary" reproductions or no reproductions at all. *Newton v. Diamond*, 388

F.3d 1189, 1193 (9th Cir. 2004). Such outputs cannot sustain an infringement claim. *Id.* Publishers have had every opportunity to address this deficiency by identifying actual examples of outputs after Anthropic urged them to amend. Mot. 3. They could not.[2]

* * *

*Iqbal* and *Twombly* require "well-pleaded facts" demonstrating "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. For direct infringement claims, that means "submit[ting] at least a representative sampling of infringed content" showing "what parts" or "portions" of a work "were copied" and where "such copying is manifest." *Becton*, 2020 WL 1877707, at *6. Publishers' failure to allege a single output referencing any of the over 20,000 Works in Suit does not meet that standard. They provide no basis for changing it simply because Anthropic built a general purpose LLM.[3]

## II. THE COURT SHOULD DISMISS PUBLISHERS' DMCA CLAIM

### A. Publishers Do Not Plead Removal Of CMI From Any Copyrighted Work

Publishers do not allege that Anthropic removed CMI from any of their copyrighted musical compositions. Instead, they argue that they did not have to plead any such facts because they allege removal from a portion of those full musical compositions—the lyrics. That argument ignores the DMCA's text and purpose, and would transform ***any*** reproduction of ***any component*** of a copyrighted work presented without CMI into a DMCA violation. Opp. 19-20. That is not the law. Indeed, many courts in this circuit have explicitly rejected such a rule. *See, e.g.*, *Andersen*, 744 F. Supp. 3d at 971 (citing *GitHub*, 2024 WL 1643691, at *2). So Publishers pivot to an alternative argument that is equally unsupported by their allegations: they claim they have in fact alleged removal of CMI from a complete work because a subset of their complete works appeared in books

---

[2] Two sentences in Publishers' complaint reference unnamed "scientific literature" that supposedly "confirms Claude will still deliver large amounts of copyrighted content as output, such as Publishers' lyrics." SAC ¶¶ 12, 119. These allegations are entirely conclusory, disconnected from the Works in Suit, and consistent with lawful conduct. In contrast to *Andersen*, Publishers offer zero examples from or details about this "literature."

[3] Publishers' allegations concerning "new or original songs" and songs "in the style of specific songs or artists" fail to state a claim for the same reasons. SAC ¶ 118; *see also* Mot. 10. And Publishers now concede that these outputs do "not directly copy Publishers' lyrics or reflect substantial similarity." Opp. 18.

that Anthropic allegedly torrented or scanned. Opp. 21. The problem for Publishers is that their complaint does not actually allege anything about removal of CMI from books. Rather, it narrowly alleges that Anthropic removed CMI from internet data that contained only lyrics (not the full copyrighted work) using specific tools the complaint never alleges were or could be applied to scanned or torrented books.

**1. The DMCA Only Prohibits Removal Of CMI From A Complete Work**

Publishers wrongly claim that Anthropic "fails to cite any authority" supporting the whole-work requirement. Opp. 20. Indeed, Anthropic's motion starts with the DMCA itself. Mot. 2. The statute prohibits "intentionally remov[ing] or alter[ing] any [CMI]," 17 U.S.C. § 1202(b)(1), which it defines as information that is "conveyed in connection with" a "work," *id.* § 1202(c). This includes the work's title, the author of the work, and the copyright owner of the work. *Id.* § 1202(c)(1)-(3). These provisions limit liability to the removal of CMI from a copyrighted "original work." *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022); *Falkner v. General Motors LLC*, 393 F. Supp. 3d 927, 938-39 (C.D. Cal. 2018) (explaining the DMCA was "intended to prevent the 'defac[ing] or deform[ing]' of protected works"); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (holding Section 1202(b)(1) "applies only to the removal of copyright management information on a plaintiff's product or original work"), *aff'd in part & rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003). Nowhere does the statute contemplate that anything less than the complete "work" is covered.

Consistent with the text of the statute, some courts require a showing that the defendant stripped CMI from an identical copy of the original work. *See, e.g.*, *Biltform Architecture Grp. Inc. v. BMA Architecture LLC*, 2026 WL 2056026, at *3 (D. Ariz. July 16, 2026); *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1057 (S.D. Cal. 2023); *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022); *Dolls Kill*, 2022 WL 16961477, at *4; *Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503, at *6-7 (C.D. Cal. Aug. 14, 2020). Applying this standard to generative AI, judges in this district have dismissed CMI removal claims at the pleading stage absent an "allegation that any output was identical to any plaintiff's ***work in its entirety***." *Andersen*, 744 F. Supp. 3d at 971; *GitHub*, 2024 WL 1643691, at *2.

Publishers do not distinguish (at 20-21) the cases applying this whole-work requirement. In *Falkner*, an artist claimed the defendant removed his CMI from a copyrighted mural by publishing a photo that "captured a portion of [the] mural" and omitted the artist's signature. 393 F. Supp. 3d at 929, 938. The court held that the plaintiff could not show CMI removal based on evidence that the defendant copied only a portion of the copyrighted work, rather than the work as a whole. *Id.* at 938-39. Here, Publishers allege that Anthropic copied only one component (lyrics) of their copyrighted compositions while omitting CMI. *Dolls Kill* supports dismissal for the same reason. The court held that plaintiffs could not state a DMCA claim by alleging the defendant "exploit[ed] [their] designs to create imitations of [their] products" lacking CMI. 2022 WL 16961477, at *3. Instead, a defendant only violates the DMCA if it "removed or altered [CMI] on Plaintiff's original work." *Id.* Publishers say *Andersen* "addressed a different issue." Opp. 20. But *Andersen* embraced "identicality" and held that CMI must be removed from a "work in its entirety." 744 F. Supp. 3d at 971.[4]

Publishers' two out-of-circuit cases do not change the result. Opp. 19-20. *ICONICS, Inc. v. Massaro* addressed what constitutes CMI, not the whole-work requirement. 192 F. Supp. 3d 254, 272 (D. Mass. 2016). The defendant had removed copyright headers from individual files that made up a software program. *Id.* The defendant "question[ed] whether headers on individual files can be CMI when the copyright at issue covers the full versions of programs, not individual files." *Id.* The court held that "the definition of CMI neither states nor implies that CMI can only ***exist*** with regard to the full version of a work." *Id.* And in the software context, "[p]utting headers in individual files is how headers" containing CMI "can be conveyed with the software itself." *Id.* That CMI can "exist" in a portion of a work does not mean reproducing a portion of the work without CMI violates the DMCA. And where *ICONICS* does address the claimed DMCA violation—"convey[ing]" a work without CMI—it refers expressly to the whole work: "the software itself." *Id.* Publishers' other case, *Real World Media v. Daily Caller, Inc.*, misinterpreted the DMCA. The plaintiff alleged that

---

[4] *Andersen* cited *GitHub* in requiring "identicality." *Supra* p. 10. Publishers note (at 21) that *GitHub* is on appeal. But the whole-work and identicality requirements are independent grounds for dismissal. Whatever the *GitHub* appeal's outcome, Publishers fail to state a DMCA claim because they do not allege Anthropic removed CMI from their whole works.

the defendant made "an exact copy of portions of an original work" without including CMI. 744 F. Supp. 3d 24, 40 (D.D.C. 2024). The court relied on the Copyright Act's treatment of "partial copies" to decide that the DMCA did not require removal from whole works. *Id*. (citing 17 U.S.C. § 107). The court did not explain how potential liability for using a portion of a copyrighted work under the Copyright Act supports liability under the DMCA. In any case, even under *Daily Caller*, Publishers are required to plausibly allege that Anthropic made an "exact copy of portions of an original work." *Id.* But Publishers have not identified any outputs containing any portion of their lyrics at all. *Supra* pp. 3-4.

**2. Publishers' Arguments In Opposition About An Unpled Theory Cannot Save Their DMCA Claim**

Perhaps recognizing the law includes a whole-work requirement they cannot meet, Publishers' opposition offers a new theory that appears nowhere in the complaint and only purports to apply to a small portion of the Works in Suit. They cite allegations that Anthropic's training materials included songbooks that contained both the music and lyrics to a small subset of the Works in Suit. SAC ¶ 6. Their opposition then argues that Anthropic used "extractor algorithms to strip CMI from these copies of Publishers' musical compositions" in its training materials. Opp. 21. But that allegation appears nowhere in their complaint. Instead, the complaint only references songbooks in the context of Publishers' separate torrenting claim and in allegations about physical book scanning. *See, e.g.*, SAC ¶¶ 6, 67-87. The DMCA claim Publishers actually pled turns on the alleged removal of CMI in the course of scraping ***webpages***. *Id.* ¶¶ 103-107. Publishers assert, for example, that Anthropic used data-cleaning tools to "separate text content from footers, where copyright notices on webpages are typically located," *id.* ¶ 105, and to "clean" CMI "from works contained in third-party datasets" of text from webpages, "such as The Pile and Common Crawl." *Id.* ¶ 104; *see also id.* ¶¶ 53, 99, 103, 106-107. None of these allegations concern removal of CMI from songbooks.

**B. Publishers Do Not Plead Distribution Of Their Works With CMI Removed**

Again, Publishers have not plausibly alleged infringing outputs. *Supra* pp. 2-10. So their claim that Anthropic distributed copies of their works without CMI through outputs necessarily

fails. Mot. 11-12. Bare assertions that Anthropic "distributed Publishers' works and copies of those works knowing that [CMI] has been removed or altered," SAC ¶ 167, and "distribute[d] outputs containing Publishers' lyrics but omitting the required [CMI]," *id.* ¶ 121, simply recite the elements of a DMCA violation. Such conclusory allegations cannot state a claim. *Iqbal*, 556 U.S. at 678; *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 780 (N.D. Cal. 2024). Knowing this, Publishers again resort to training-use allegations. Opp. 21-22. But those allegations do not describe any distribution in outputs either.

Publishers cannot save their claims with vague assertions that Claude outputs "verbatim and near-verbatim copies of [their] lyrics." SAC ¶ 109. This assertion does not "identify[] what CMI was removed prior to distribution and how that distribution was accomplished." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019). Publishers also never say what lyrics Anthropic allegedly ***distributed*** in Claude outputs—they only purport to identify a list of songs from which Anthropic "***remov[ed]***" CMI. SAC ¶ 169. In any event, Publishers' distribution claim fails on the same whole-work requirement that defeats their removal claim.

## III. THE COURT SHOULD DISMISS COUNT II (AS TO OUTPUTS) AND COUNT V (IN FULL) *WITH PREJUDICE*

Publishers do not dispute that Anthropic placed them on notice of the deficiencies in their complaint before they last amended. Publishers claim only that notice of a deficiency needs to come from a court, not a party. No such rule exists. Courts routinely dismiss with prejudice where a plaintiff has received notice of deficiencies from the defendant and then amended their complaint, but failed to remedy the identified defects. *See, e.g.*, *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 153 (S.D.N.Y. 2021) (denying leave to amend where plaintiffs "already amended their complaint" and failed to fix deficiencies in the previous pleading despite "having the benefit of a pre-motion letter from the Defendant outlining the proposed grounds for dismissal"). That makes sense. The relevant question is whether a plaintiff "has already had an ***opportunity*** to cure [a] deficiency and has failed to do so." *Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688, at *8 (N.D. Cal. Feb. 24, 2022); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (key inquiry is whether plaintiff "has previously amended"). They have. They have been

litigating essentially identical claims for two years in *Concord I* and have already filed two complaints here. At this point, one of two things is true: either they do not have a factual basis to cure these pleading deficiencies or they have made the strategic decision to take a chance on their deficient allegations. Either way, the Court should dismiss with prejudice.

**CONCLUSION**

The Court should dismiss with prejudice the portion of Publishers' infringement claim premised upon outputs in Count II, and Count V in full.

Date: September 14, 2026

/s/ *Sonal N. Mehta*

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (Pro Hac Vice)
robin.burrell@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

ALEX W. MILLER (Pro Hac Vice)
alex.miller@wilmerhale.com
JARED V. GRUBOW (Pro Hac Vice)
jared.grubow@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

LOUIS W. TOMPROS (Pro Hac Vice)
louis.tompros@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

*Attorneys for Defendant*
**ANTHROPIC PBC**